Plaintiff alleges that in the year 1858 it acquired for depot •and railroad purposes the tract of land formerly belonging to the heirs of E. N. Wilson, in and near the town of Monroe — that it was acquired by purchase and duly-recorded.
That in the year 1859-60 it acquired for a valuable consideration from Dr. John Calderwood and wife a strip of land one hundred and fifty feet wide through the tract of land immediately adjoining the Wilson tract below and on the south thereof — that same, however, was acquired by the original Vicksburg, Shreveport & Texas Railroad Company, which constructed its railroad and tracks thereon in the year 1859-60, and that same has been operated ever since, save an interval during the war.
The petitioner had, by purchase, succeeded to all the rights of the Vicksburg, Shreveport & Texas Railroad Company, and had made extensive and valuable additions to the tracks and works. That for the proper and safe use of ios property, whose large machine shops and numerous tracks have been made, and to prevent trespassers from its yards and tracks where they have no right, and to prevent accidents and injury to persons so trespassing, the plaintiff had enclosed on either side its shop and track yard for its own protection and that of the public.
That pretending that two several streets of the town crossed the tracks and yard of the company, to-wit: the streets known as Grammont and Wood, had been closed by plaintiff, the Mayor and City Council of Monroe had ordered and threatened the removal of said fence on what they claim is Grammont and Wood streets; that said removal would be made and a consequent trespass on the rights and property of petitioner which would work irreparable damage to *1104 it, which if estimated in money would be over twenty-one hundred dollars besides the expenses and costs of the proceeding then instituted.
On the prayer of plaintiff an injunction issued restraining the Mayor and City Council of Monroe from committing the trespass threatened, and that they be required not to interfere with or remove the fence constructed by petitioner for the protection of its yards, shops, machinery and tracks in the town of Monroe from Sixth street to the crossing of Oak street by plaintiff’s line of road as now fixed.
Defendants answered, pleading first a general denial. They admitted the repeal of Ordinance No. 588 (closing Grammont street), approved March 2, 1885, and the adoption of the preamble and resolutions to Ordinance No. 843, approved February 4, 1895, ordering plaintiff to remove obstructions to Grammont and Wood streets.
They averred that said preamble, resolution and ordinance were adopted in strict accordance with the powers and rights of the Mayor and City Council of Monroe, as fixed by the charter of said city and the amendments thereto. They denied that plaintiffs or their assignor “ acquired from Dr. John Calderwood and wife a strip of land one hundred and fifty feet wide through the tract of land immediately adjoining the Wilson tract below and on the south thereof.” They averred that by judgment of the Supreme Court in the suit of the Vicksburg, Shreveport & Texas Railroad Company vs. John Calderwood, No. 794 on the docket of said court, rendered on the 23d of July, 1860, a strip of one hundred feet wide through the above mentioned tract of land was expropriated to the use of the above railroad company; and that said strip of land is held by plaintiff subject to all the restrictions and provisions of law applicable to lands expropriated for public use and benefit. They averred that Grammont street and its extension to beyond Young’s Bayou was used as a free thoroughfare and road before the Vicksburg, Shreveport & Texas Railroad was built or incorporated; that said street and road was located on the Calderwood or Hart tract and on that of the Wilson or Railroad tract. That the Railroad and Hart addition to the town of Monroe was surveyed and laid off by G. Y. Dabney, Superintendent and Chief Engineer of the North Louisiana & Texas Railroad in the year 1870, and the map of said *1105 addition was filed in the Recorder’s office of the parish of Ouachita, and paraphed “ Ne Varietur” on the 12th of January, 1871.*
That by said survey and the filing of said map, and by divers acts on the sale of property and recognition of said map, the said Gram *1106 mont street, from its intersection with Hall street to the eastern limits of the town and city of Monroe, was dedicated to the public use and became one of the streets of said town and city of Monroe. Théy averred that Wood street, from Young’s Bayou, the eastern boundary of the city, to the Vicksburg, Shreveport & Pacific Railroad,, has been regularly and legally dedicated to the public use as one of the streets of the city of Monroe. They averred that petitioner’s property, the Vicksburg, Shreveport & Pacific Railway, is a public highway under the Constitution and laws of the State of Louisiana,, and as such plaintiffs are totally without power to obstruct or prevent free ingress or egress from any public road or street to or from the right of way of said railroad or highway. They averred that. Wood street was dedicated to public use as a street of the city of Monroe, from the right of way of said North Louisiana & Texas Railroad (now Vicksburg, Shreveport & Pacific Railroad) to the eastern limits of the city, by the filing in the Recorder’s office of the parish of Ouachita the map of Delery’s addition to the city of Monroe, in 1871, and by other acts ratifying said dedication. They averred that they had been specially damaged by the injunction obtained by the plaintiffs in the sum of five hundred dollars as attorney’s fees, and in the further sum of two thousand dollars by the illegal interruption of travel on the streets of the city by the costs incurred, by bringing the authority of the city in contempt and otherwise.
The District Court gave judgment in favor of the plaintiff, perpetuating the injunction, and the defendants appealed.
The opinion of the court was delivered by
Nicholls, C. J.
We find in the record a correspondence between parties representing the railroad company and the city authorities of Monroe, just prior to the passage of Ordinance No. 588, declaring Grammont street closed. On November, 1884, F. Y. Dabney, chief engineer and superintendent, wrote a letter to the mayor and City Council that he was in receipt of information which justified him in the belief that Grammont street, from the freight depot as then located to the vicinity of the Hebrew cemetery, was a part of the original property of the road and had never been alienated, and that it would be a grievous burden upon the company to keep that street. *1107 open at all times in view of the numerous tracks that were designed to cross it. He further stated that it was his duty to inform them that unless it could be shown that the company had no rights in the premises, the company would be forced to close said street at such points as it crossed its tracks.
John Scott, vice president and general manager of the railroad company, also wrote to the Mayor and Council. He stated to them that he had been advised that the street claimed by some of the citizens of Monroe to exist through the railroad’s yard, being an extension of Grammont street as laid out on some of the maps, had been used by the public only by sufferance of the railroad temporarily while there was no necessity to prevent such use. That he had lately become aware that a different view of the public right was entertained by some of the inhabitants of Monroe, and that, in deference to their wishes, the council had deemed it just, and had felt constrained to demand, that said alleged street be and remain unobstructed until and unless it could be judicially determined that no such public streets exist as a matter of right. That the company would therefore find it necessary, to protect itself from any injury and damage so large as to be wholly disproportionate to the public inconvenience involved, to enter into a litigation with the public'through the Council; but believing that the Council in common with the citizens of' Monroe generally would be willing to deal with the questions involved in a spirit of fairness, the company itself being reluctant to gain public ill will by insisting on its rights through the courts if the controversy could be otherwise settled to the mutual satisfaction of' the parties concerned, it asked that the street in question be declared by a resolution of the Council to be henceforth vacated as a public street, permanently abandoned and closed. In consideration of such-action the company proposed to pay the necessary expense of opening and making such other street or streets as would best contribute-to the public convenience, as a substitute or substitutes for the one closed, to be designated by the Council and agreed upon as a condition to the closing of the street then asked for. The company suggested that the matter be at once considered, and the expense of opening a new street, so far as the acquisition of necessary lands was concerned, be ascertained, and that the resolution asked for be passed-to take effect only upon the conditions to be therein stated. The-company asked that in the meantime further action by the authori *1108 ties in respect to the proposed removal of alleged obstructions be temporarily suspended — the company also suspending any action on its part in respect to legal proceeding in the premises.
The passage by the Council of the Ordinance No. 588, closing Grammont street on the terms and conditions stated, followed shortly after, the ordinance obviously evincing a compromise between the parties relatively to their respective contentions and claims.
Shortly after the company purchased from Ferd. Cook and the heirs of Delery the lots and ground necessary to be acquired to enable it to make the necessary changes in the streets and opened a connection between Grammont and Eighth street. It also opened, ditched and graded Eleventh street from intersection with Oak street to Elysian street through the property purchased from the heirs of Delery and its own property.
Matters seem to have been satisfactorily adjusted between the company and the railroad from 1885 and 1886 up to within a short period prior to the passage of Ordinance No. 843, which repealed the Ordinance No. 588, by which Grammont street was declared closed, and notified the railroad to remove obstructions, declared to then exist interfering with the free use of Grammont street and of Wood street where said streets cross the tracks of the railroad, and to remove the fence from the sidewalks of Grammont street on the north of said railroad line.
The act which gave rise to this repealing ordinance seems to have been the placing by the company of a fence around a portion of its grounds, the fence closing the space covered by what the Council claimed to be the public street known as Grammont and closing East Wood street at its point of intersection with the railroad’s right of way.
Counsel for the city says the legal questions presented to the court for consideration are:
1. Has the Mayor and city of Monroe the authority to cause the removal of obstacles from the streets of the city?
2. Are Grammont and Wood public streets of the city of Monroe by express or implied dedication?
3. Has a railroad company, after buying or having property donated to it by formal act with regard to its situation on a known and recognized street, the right to run a fence across that street and claim the street as its own property?
*1109 4. Has a railroad company, after having expropriated land for its right of way, the right to build a fence cutting off a public street or road at its intersection or crossing of that right of way?
On the first point submitted counsel say: “The power of the Mayor and City Council, under the fifth section of its amended charter (Act No. 81 of 1871), is ample and complete with respect to the management and control of the streets, public roads, etc., of the city, to-wit: ‘The Mayor and City Council shall have full power and authority to make and pass such laws as are necessary and proper. Ninth, to survey and lay out streets, to regulate and make improvements to the streets, public squares and other propety, * * * to order and direct the ditching, filling, opening, widening and continuing any of the streets, * * * to determine the completion and pavements of the streets; to fix the squaring and prevent any encroachments upon or the stopping and obstructing of the streets * * * and to order any object, whatever may be its value, which may encumber the said places or prevent and embarrass the free use of the same to be removed or sold for whom it may concern in the same manner and after such advertisement as shall be required by ordinance.’ ”
The city complains that though it was specially authorized by its charter to cause the removal of obstacles from the public streets it has been restrained from doing so by injunction.
The right of the city of Monroe under its charter to cause the removal of obstructions from its public streets is unquestionable, but the right of a person who denies the legality of the exercise of that power in respect to a particular locality to apply to the courts for the purpose of judicially testing whether it fell under the operation of the power is equally clear. The city of Monroe and the plaintiff company were at issue as far back as 1885 as to whether the street known as Grammont street extended along or across the company grounds or not. Whether from a fear on both sides as to what would have been the result of litigation designed to settle that matter through the courts or from a spirit of mutual concession or self-interest, the fact remains that the parties adjusted their differences at that time in a manner satisfactory to both. They designedly withdrew from determination by the courts their respective claims and pretensions.
The circumstances of this case do not call for any investigation by *1110 us of the original rights of the parties in respect to Grammont street.
The ninth section of Act No. 81 of 1871 has been materially changed by an amendment to the sapm made by the fifth section of Act No. 81 of 1873. We quote so much of this last mentioned section (Sec. 5) as is necessary for our present purposes:
“ Section 5. That the ninth paragraph of Sec. 9 of said aforementioned act to be so amended and re-enacted as to read as follows:
“Ninth — To survey and lay out streets, to regulate and make improvements to the streets * * * to order and direct the ditching, filling, opening, widening and continuing of any of the streets; and if for the above or other public purposes the land of any private person or body corporate is necessary to be had, to purchase the same at a reasonable price or cause the same to be expropriated according to the mode and formalities prescribed by existing laws upon the subject; to close and sell to any parties any street, alleys or real estate donated to the city for the use thereof in cases in which such •closing and sale would enure to the public convenience and inderests of said corporation.” The action of the City Oouncil in enacting ■Ordinance 588 of 1885 was obviously grounded upon this section of the law of 1873, as the recitals of the ordinance show. It declares that the closing of the street when accomplished by compliance on the part of the railroad company with the obligations imposed on them therein would enure to the public benefit, convenience and interest of the city.
The Oouncil was authorized to pass the ordinance.
The city contends that the company has failed to comply with its obligations under the ordinance, and, therefore, it has a right to ignore it and proceed as if it had not been passed. We note the fact that the closing of the street was conditioned upon compliance by the railroad company with its obligations, but we think that as •a matter of fact the company has complied with them; not only this, but the city has taken possession of Eleventh street over the property purchased by the company to be used as a substituted street and dealt with it as such. It is not claimed that that street or its use passed to the city otherwise than under the act of compromise — it has not been expropriated nor has it been dedicated to the public •except through and by the terms of the compromise between the parties. We are of the opinion that the act of agreement stands between the city (one of the parties to the act) and its course as in. *1111 form and manner it has undertaken to presently proceed. Railroad Co. vs. Jacobs, 44 An. 922.
The city in its brief says it “ draws a distinction between Grammont street and Wood street from the fact that plaintiff claims the former street as being entirely located on its own property and denies the dedication, whereas the dedication of Wood street is indisputable and plaintiff can only resist the right of the city to open that street or keep it open to a portion of its right of way. Plaintiff ■claims in its petition for injunction that it purchased the strip on which its right of way is located from Dr. Oalderwood and wife, but it has been shown this allegation is erroneous.”
Referring to Wood street the brief says: “ On all the maps which have been introduced in evidence in this suit, except the map of the Railroad and Hart’s addition, Wood street is represented as running from the eastern limit of the city to and into the railroad right of way. The original map of Delery’s addition filed in 1871 has been lost, but that map with all others showing special additions was embodied in the McLeran maps (filed in evidence) accepted by the city in 1874. Wood street never crossed the railroad right of way, as there is a portion of it west of the railroad which has never yet been ■expropriated by the city. But for twenty-four years it was open on the east side and recognized and used as a public street into the right of way, until it was fenced by plaintiff prior to the institution ■of this suit. Wood' street enters the right of way on expropriated property. The expropriation was made for public use. Can the railroad now deprive the public of that use which they have had for more than twenty years, and deprive the property owners on Wood ■■street of a servitude which they acquired when they purchased the property? Article 244 of the Constitution of 1879 declares that ‘railways heretofore constructed or that hereafter may be constructed in this State are hereby declared public highways.’ A way open to all the people is a highway. The exceptional feature of the instant case, is that Wood street has never been opened across the right of way of plaintiff; an object which the City Council has in view in the immediate future. The facts of the case are these: At the point of intersection there is a space of at least forty feet on the ■east side of the right of way unoccupied by tracks. Diagonally across from Wood street, on the west side of the right of way and ■extending to it, is Extension alley, recognized in plaintiff’s deeds and *1112 map, and, therefore, persons passing to and from Wood street either-went to the east, along the right of way to Oak street, or to the west to Desiard street, or else crossed the tracks and right of way to Extension alley.”
The city of Monroe was incorporated by act of the General Assembly, approved March 14, 1820. It has been since greatly enlarged by successive additions to its territory of rural property in the neighborhood laid out into squares and streets by its owners, the property so laid out having been brought under the power and control of' the city by subsequent acts of the Legislature (see Act No 102 of 1871,. Act. No. 81 of 1873). Among these additions was one known as the- “ Delery addition.” The map connected with that addition is stated to have been lost, but the property is not claimed to have been laid out by its owners prior to 1871. It was dehors the city limits long after the railroad company acquired its right of way, which was as far back as 1858 or 1860. Railroad vs. Calderwood, 15 An. 481.
We have found on the maps offered in evidence a street designated by the name of Wood or West Wood street. It commences at the Ouachita river and runs back into the city until it reaches Eighth street, which is a longitudinal street running more or less parallel to the river. East Wood street stops at Eighth street and directly opposite to Wood street, on the opposite side of Eighth is private property, which extends from Eighth to the railroad’s right of way. To the right of West Wood street, going from the river, is Oak street, which, commencing at the river, crosses the railroad’s right of way and extends beyond to the eastern limit of the city. The longitudinal streets-are designated by numbers (though some of them are known also by special names) — the numbers running from two to eighteen or more; Second street being that nearest Ouachita river. The streets running back, or away from the river and nearest to WestWood street, are, first, Grammont street, which, starting at the Ouachita river, runs back to Eighth street; and next, on the left of Grammont street commencing at the river, is Desiard street, which crosses the railroad track, and extends to the eastern limits of the city. At a point on the line of Eighth street furthest from the river and about midway between where Wood and Oak streets strike Eighth street starts an alley about twenty feet wide, known as Extension alley, which runs back as far as the nearest line of plaintiff's right of way. Were West Wood street *1113 extended from Eighth to and over the plaintiff’s right of way it would connect with a street known as East Wood street, claimed to have been dedicated to the public through the Delery addition in 1871 to the city. In making the plan of that addition the Delerys ran East Wood street to the right of way, but left open no longitudinal street along the right of way by which parties intending to pass to the front of the city could turn toward Oak street, and there cross the tracks. The side lines of the lots of the Delery property on East Wood street nearest the railroad ran directly up to and along the back line of the right of way. East Wood street was substantially a “ cul de sac.” The Delerys had no power to extend it over the right of way; they might deal with their own property, but certainly could not dispose of that of other persons. In the voluntary disposition of their own property they were at liberty to dedicate to the public just so much, or just so little as they thought proper. They were under no obligation to grant gratuitously a street along the railroad line of way from West Wood to Oak street. The city took what the Delerys gave and no more. It is under these conditions that the city claims that the placing by the railroad company of a fence along their line of road so as to bar entrance upon it from the way of East Wood street was an illegal interference with public rights and an unauthorized obstruction upon a public street. This contention is based upon the proposition that the railroad company did not hold its right of way by “ purchase,” but by an “expropriation for public use;” that the public use to which the property expropriated was thus thrown open was not limited to use for railroad purposes, but for all public purposes, and certainly for that of a highway for crossing purposes. The expropriation proceedings devoted the strip expropriated for railroad purposes for a, full consideration paid for that right by the railroad company.
It is difficult to see how an outlay of the money of the company could be held to forcibly enure to the benefit of the city of Monroe. So far from property which has been appropriated to one public use being thereby ipso facto made applicable to all other public uses, it has been repeatedly questioned whether it could be made applicable at all for a different purpose than that for which it had been specifically expropriated. Lewis on Eminent Domain, Sec. 266, says that “ a general authority to lay out highways and streets is sufficient to authorize a lay-out across the right of way of a railroad *1114 but under a general authority to lay out highways a part of the right of way can not be taken longitudinally, nor can the way be laid through the depot grounds, shops and the like, which are devoted to special uses in connection with the road and necessary to its operation and in constant use in connection therewith. But a slight interference with the platform of a depot will not prevent the establishment of a highway.”
We do not undertake to discuss under what circumstances and to what extent the power of eminent domain over property already expropriated for one specific public use can be applied to make it serve another public purpose. Each case will have to be determined by its special circumstances. The authority cited is used by us as going to show that the city’s claim that an expropriation of land for railroad purposes by a particular railroad necessarily carries with it as an immediate and direct consequence the right of a city or parish to build or carry a street across it without expense of any kind to itself, and without judicial proceedings, is not tenable; certainly not in the absence of a statute or of the company’s holding its charter subject to such right.
In the case at bar the city has never attempted by expropriation proceeding to extend East Wood street across the railroad right of way oyer to Eighth street, where that West Wood street now terminates. In order to make the connection between East and West Wood street, not only would the city have to obtain a right of way across the railroad property, but it would have to expropriate a portion of the private property lying between the railroad, West Wood and Eighth street. It is idle to discuss npw what the Council could -or could not do under expropriation proceedings taken out under its '(power of opening and closing streets granted by the fifth section of Act No. 81 of 1873. It will be time enough to examine into that anatter when an actual issue confronts us. No proceedings ■of that character have been instituted. As matters stand (and we are dealing with the parties from the present condition of things .alone,) the city objects to the company’s fencing in its right of way .■along its line of intersection with East Wood street as an interference with public rights and an obstruction upon a public street obviously under an asserted claim in the public to pass longitudinally along plaintiff’s right of way from the head of East Wood street to Extension alley or Oak street. That right in the public does not in our *1115 •opinion exist, simply by virtue of its having been left unenclosed and a portion of the public suffered to pass along it unopposed. The company was not forced to fence its right of way, but it had the right to do so, so long as the legal rights of others were mot impaired. Grossman vs. City of Oakland, 41 Pac. 6. There ihas been no dedication by the company to the public of any portion of its right of way nor is there any description in this case. New Orleans & Carrollton R. R. Co. vs. Carrollton, 3 An. 285; Torres vs. Falgoust, 37 An. 500; City of Shreveport vs. Drouin, 41 An. 870; Kansas City C. & S. Ry. Co. vs. Woolard, 1 Mo., App. Rep. 258; Am. Digest, 1895, p. 2155, No. 24. We think the judgment correct and it is hereby affirmed.

 Ordinance No. 588 referred to is as follows:
•“ An ordinance declaring Grammont street where it is crossed by the tracks of the Y. S. & P. R. Company closed against public travel as a thoroughfare whenever the said railroad company shall have opened Grammont street into Eighth, properly ditched, graded and otherwise prepared for public uses, and shall have properly opened, ditched and graded a street running north from a •point where Oak street intersects with the main track of the Y. S. & P. Railroad to Grammont street, and shall have opened, ditched and graded a street running north from Grammont street to Elysian street. The opening, ditching and grading of said streets to be done at the expense of said railroad company, and the closing of said Grammont street, by the operation hereof, at said point being declared to enure to the public convenience and interest of the city.
“Be it ordained by the Mayor and City Council of Monroe, That Grammont •street, where it is crossed by the tracks of the Y. S. & P. R. R. Co., be and the same is hereby declared closed against public travel a¿ a thoroughfare; provided, that the Y. S. & P. R. R. Co. shall open Grammont street into Eighth street, properly ditched, graded, and otherwise prepared for public uses, and provided said company shall open, ditch and grade a street running north from a point where •Oak street intersects with the main track of said railroad, and thence to Grammont street, and provided said company shall open, ditch and grade a street running from Grammont street to Elysian street; said work herein imposed on said •company to be done within a period to be fixed by the Mayor and to be notified by him to the company — official notice of the passage of this ordinance to be made— •and provided further, that all expense for the purchase of the property to open the streets which said company is herein required to open is to be borne by it, also all cost of ditching and grading the same, and provided further, that the work •contemplated under the provisions of this ordinance be done to the entire satisfaction of the Mayor.
“Be it further ordained, That the closing of said street at said point when accomplished by compliance on the part of said railroad company with the obli•gations herein imposed on them is hereby declared to enure to the public benefit, convenience and interest of the city.”
This ordinance is declared to have been adopted in 1885.
Ordinance No. 848 and the preamble and resolutions attached to it, also referred •to in the pleadings, are as follows:
“ Whereas, Y. S. & P. R. R, Company have continued for years openly and persistently to avoid, fail and refuse to comply with the obligation entered into by them which induced the Mayor and City Council to provisionally close Grammont •street as a thoroughfare where it crosses the tracks of said railroad company; and
“Whereas, in disregard and contempt of the protests and demands of said Mayor and City Council the said company has inclosed both Grammont and Wood streets, and thus cut off all communication north and south of said tracks from Besiard to Oak. Therefore.be it
“ Resolved, That the Mayor be and he is hereby authorized to notify the officers •of said Y. S. & P. R R. Co. that Ordinance No. 588, approved March 5,1885, has been this day repealed, and further to order said railroad company to remove all •obstructions now existing which will in any way interfere with the free use of Grammont street and of Wood street, where said streets cross the track of said railroad, to remove the fence from the sidewalks of Grammont street on the north •of said railroad line, and to notify said company that if said obstructions are not removed within ten days they will be removed by the police force at the costs of •said railroad company.”
Approved February 4, 1895.
Ordinance No, 843,
Repealing Ordinance No. 588, Approved March 2,1885.
Section 1. Be it ordained by the Mayor and City Oouncil of the city of Monroe in regular session convened, That Ordinance No. 588, approved March 2, 1885, •entitled “ An ordinance declaring Grammont street where it crosses by the track •of the V. S. & P. Railway Company closed against public trafile as a thoroughfare ” is hereby repealed.
Sec. 2. Be it further ordained, etc., That this ordinance shall take effect from .and after its passage.
Approved February 4, 1895.