(35 South. 390.)

No. 14,510.

LAWSON v. SHREVEPORT WATER-
WORKS CO.

(March 2, 1903.)

HIGHWAY — DEDICATION — REVOCATION—AC-
CEPTANCE — CHANGE OF LOCATION — USE
BY PRESCRIPTION — LICENSE — DEFECTIVE
BRIDGE—LIABILITY OF OWNER.

1. A person making in his own name some advantage for a third person the condition or consideration of a commutative contract, or onerous donation, cannot, after such third person has availed himself of such advantage, revoke the same.

2. In selling the soil, over which a roadway in use by the public passes, to another, a stipulation, couched in general terms, that the road is to be kept open and a bridge constructed across a small bayou for the use of the road, is to be taken as a stipulation *pour autrui*—for the public.

3. And the public's assent to this stipulation in its favor is signified by its continuous use of the road and of the bridge constructed over the bayou.

4. When the route of a public road is changed by ordinance of the Police Jury, the old road continues the public highway until the new is laid out, opened and made practicable.

5. From defendant company's contractual assumption of the duty to construct a bridge over the bayou, as also from the fact of its interference with the old crossing of the bayou, doing away with such crossing and undertaking to construct a bridge there to take its place, results in law the obligation on its part of constructing such a bridge as would be reasonably safe for the public, using the road, to cross.

On Rehearing.

6. The right of passage is a discontinuous servitude, which can be established only by title.

7. In the absence of proof of intention on the part of the owner to dedicate his property to public use, the mere use of the passage by the public cannot supply a title or serve as the basis of prescription.

8. Where one knowingly leaves open his property under circumstances calculated to lead others to think that they are invited to use it, he impliedly licenses its use by the public, and assumes an obligation to see that it is kept in a reasonably safe condition.

9. The owner of land, over which the public has been allowed, for a number of years, to use a road leading across a small bayou, impliedly invites the public to make use of a bridge which he constructs at the crossing and concerning which he gives no notice of any kind; and where such bridge is negligently constructed, and falls beneath the weight of a man and a mule, inflicting injury upon both, such owner is liable in damages.

Nicholls, C. J., dissenting on rehearing.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Alfred Dillingham Land, Judge.

Action by Henry J. Lawson against the Shreveport Waterworks Company. From a judgment for plaintiff, defendant appeals, and plaintiff, by answer filed, asks for an increased judgment. Affirmed.

Leonard, Randolph & Rendall and Wise, Randolph & Rendall, for appellant. Sidney Levy Herold and David Thompson Land, for appellee.

BLANCHARD, J. This is an action to recover damages for personal injuries sustained by plaintiff, occasioned by the collapse of a small bridge erected by the defendant company over a canal or ditch it had excavated across a country road near the City of Shreveport.

Plaintiff was at the time riding a mule along the road aforesaid and his contention is that in crossing the bridge it gave way beneath him, throwing the mule and himself off the bridge into the ditch, so severely injuring the mule that it, shortly afterwards, died, and injuring himself to that extent that one of his hands is permanently disabled.

Defendant company denies liability both on the facts and law of the case.

Its contention is that the road in question was not a public road and that plaintiff, in traveling it, was a trespasser; that it owed him no duty in respect to the bridge, in crossing which he claims to have been injured; and that if it did owe him any such duty, and there was negligence on its part in

discharging same (which is denied), and injury resulted to plaintiff, he still cannot recover because of his own contributory fault and negligence.

The case was tried by jury who found for plaintiff, awarding him a judgment for $600.00. He had sued for $2,600.00.

From a judgment based on this verdict defendant appeals, and in this Court, by answer filed to the appeal, plaintiff asks that the judgment be increased to $2,600.00.

*Ruling*—Plaintiff, a colored man, lives six and a half miles north of Shreveport and is a farmer by occupation.

The road he traveled to town was generally looked upon and used as a public road. This road crossed a stream known as Cross Bayou, just at the north boundary line of the City of Shreveport.

Over this stream the Police Jury had established a public ferry. This ferry had been established some six or seven years prior to the time of the occurrence which gave rise to this litigation. It was known as Dock's Ferry.

From the time the ferry was established the Police Jury recognized, and the public used, the road leading across the ferry and northward of it as a public road, and it was one of the minor highways leading into and out of the town. It was much traveled.

The owners of the soil over which the road ran never objected to its use as a public highway; never objected to the Police Jury treating it as one of the public roads of the Parish and making provision for it as such.

This was the situation when the defendant company, which owns and conducts a waterworks system in Shreveport, desiring to enlarge its supply of water, conceived the idea of connecting a stream called Twelve Mile Bayou, shown on the maps of that country to be the connecting link between Soda Lake and the Red River, with Cross Bayou, which is the outlet of Cross Lake, and which flows into Red River at the upper corporate line of Shreveport.

The company's supply of water is obtained from the lower reach of Cross Bayou.

The distance between Twelve Mile Bayou and Cross Bayou at the point, a short distance north of Shreveport, where it was proposed to connect the two streams, is about a mile.

Across this intervening space was a small bayou called Blind Bayou, which originally ran from Cross Bayou towards and into Twelve Mile Bayou. Blind Bayou had filled considerably and in its upper reach had become more or less a depression in the soil of cultivated fields.

The idea of the Waterworks Company was to dig a canal in and through Blind Bayou, so as to drain the water from Twelve Mile Bayou into Cross Bayou, and to facilitate this purpose a dam was to be constructed in and across Twelve Mile Bayou just below where Blind Bayou had its connection with Twelve Mile Bayou.

In order to execute the plans it had formed, the company purchased strips of land from various owners whose holdings bordered upon Blind Bayou. In this way it acquired the soil through which ran Blind Bayou. It then proceeded with the work of excavating the canal through the bayou.

At the time the company purchased the strips of land aforesaid, the dirt road heretofore referred to, coming southward to Shreveport, crossed Blind Bayou twice.

The second crossing was a few hundred feet from where Dock's Ferry is established over Cross Bayou.

Here the company, having a good deal of hauling of its own to do in connection with its work of excavating the canal and erecting the dam in Twelve Mile Bayou, constructed a bridge.

This bridge was put where the road leading to the ferry crossed Blind Bayou.

It seems that before the company put the bridge there the road crossed Blind Bayou, or the depression known as such at that point, without the use of a bridge. The bayou could be crossed there without a bridge, and people traveling the road managed to get over though no bridge was there.

The company, it would seem, in compliance with the obligation it assumed in the deed executed to it by John Dixon for the strip of land at that point, and to facilitate its own hauling, did away with the old crossing and substituted the bridge.

It ditched the bayou at that point, put in a culvert to act as a drain, and constructed the bridge over the culvert.

Dixon, who owned the land there, in sell-

ing a strip to the company, put in the act of sale this stipulation, to-wit:

"The Shreveport Water Works Company further agree to construct and maintain across Blind Bayou, or any canal to be hereafter built by them, a bridge and approaches at a point not to exceed 300 feet from where Blind Bayou now intersects Cross Bayou—said bridge to be strong enough and sufficient to meet the demands of ordinary wagon traffic. And to grant a right of way to and from said bridge across any property that the Shreveport Water Works Company may own, to their boundary line, or public thoroughfare."

This is to be viewed as a recognition by the owner of the land of the then existing public character of the road passing along there and leading to Dock's Ferry, and as making provision to secure the maintenance of that status.

It was a clause embodying a reservation in favor of the general public. This is apparent from the general terms used. The building and maintenance of a bridge and a roadway at that point was not merely stipulated for on behalf of the owner of the adjacent soil.

It was a stipulation *pour autrui*—for the general public. Up to that time the road, for years, had been used by the traveling public. When, therefore, the owner of the soil over which it passed, in selling the soil, stipulated for the road to be kept open and a bridge constructed and maintained for its use over Blind Bayou, he could have meant nothing less than that the then existing status should continue.

And the public's assent to this stipulation in its favor was continuously signified by its use of the road and of the bridge constructed over the bayou, which use was to the knowledge of, and without objection from, the Waterworks Company, the vendee of Dixon.

It seems that just before the suit was tried in the court a qua the company asked and obtained from Dixon his signature to a paper which set forth that the stipulation in the deed from him to the company, under discussion, was not intended for the benefit of the public, but for his own benefit.

When this was offered in evidence it was objected to. The court permitted it to be filed, referring the objection to the effect to be given to the document.

It can be allowed no effect. The stipulation in the deed is controled by the principle announced in articles 1890 and 1902 of the Civil Code, which is that a person, making in his own name some advantage for a third person the condition or consideration of a commutative contract, or onerous donation, cannot, after such third person has availed himself of such advantage, revoke the same.

See Planters' Oil Mill v. Monroe Waterworks & Light Co., 52 La. Ann. 1249, 27 South. 684.

The road, then, leading across the bridge where plaintiff was hurt, and to Dock's Ferry, was, at the time plaintiff received his injuries, a public road.

True, the Police Jury had, prior to that time, passed an ordinance changing somewhat the route of the road, so as to make it run along the right of way of the T. S. & N. Railroad, which crosses Cross Bayou immediately below Dock's Ferry. But the new road had not yet been opened up and was not in use by the public, and until it was laid out and opened and made practicable the old road continued as the public highway. Witter v. Damitz, 81 Wis. 385, 51 N. W. 575; Keystone Bridge Co. v. Summers, 13 West Va. 476.

Defendant company undertook, in its purchase from Dixon, to construct and maintain a bridge "strong enough and sufficient to meet the demands of ordinary wagon traffic." This was the obligation it assumed to the public who used the road whose purposes the bridge was to subserve.

Besides the obligation thus voluntarily assumed by it, the company, interfering with the old crossing of Blind Bayou at that point, doing away with such crossing and undertaking to construct a bridge there, must be held in law to the obligation of constructing such a bridge as would be reasonably safe for the public, using that road, to cross. And if a deficient bridge, an unsafe one, was erected and injury resulted to a traveler having the right to pass along that way and cross the bridge, the liability of the company results. Caldwell v. V. S. & P. Ry., 41 La. Ann. 624, 6 South. 217.

The plaintiff, on the day of the accident,

was traveling the road in question, going to Shreveport. Another colored man was with him. Both were horseback. They came to the bridge over Blind Bayou near Dock's Ferry. They were to cross at the ferry.

Hardaman Brown, who was riding with plaintiff, crossed the bridge first. He passed over in safety. Plaintiff, coming after him, was on the bridge, when, just as Brown's horse was stepping off the far side of the bridge, the southwestern corner of the structure gave way, with the result that the bridge careened to the westward, precipitating the plaintiff and the mule he was riding into the ditch, injuring both.

This version of the occurrence is supported by the positive testimony of both the plaintiff and Brown, who were the only persons present at the time.

It must be allowed to prevail over the theory propounded by the defendant that the bridge was covered with mud and slippery, and that the mule plaintiff was riding slipped and fell on the bridge, thus causing it to give way and precipitating both into the ditch.

While this theory finds some support in testimony as to mule tracks found on the bridge shortly after the accident, giving the appearance of a mule having slipped on the bridge, the jury, who tried the case, must have, in finding for plaintiff, reached the conclusion the bridge had given way as contended for by plaintiff.

It gave way because, evidently, of its defective condition. While loaded wagons had crossed it that day prior to the accident, the fact nevertheless remains that it did give way beneath plaintiff's mule. This would not have been the case had it been securely constructed. In constructing it, the duty was on defendant company to provide against the effects on the structure of bad weather, washing rains, caving banks, etc. It had rained the day of the accident.

Expert testimony found in the record establishes conclusively that the bridge in question was not securely constructed.

In the Caldwell Case, *supra*, this court said:

"The fact that the weight of a single horse and rider was sufficient to break through the bridge is conclusive evidence of its defectiveness."

With regard to the quantum of damages, we do not see our way clear to disturbing the amount assessed by the jury as a just compensation for the injuries suffered by plaintiff. The evidence disproves permanent disability of the injured arm and hand.

For the reasons assigned the judgment appealed from is affirmed.

### On Rehearing.

(Nov. 30, 1903.)

### Statement of the Case.

MONROE, J. For many years the main and only country road leading northwest from Shreveport was the Tim Mooring and Shreveport road, travelers upon which passed over Cross Bayou at Isaac Bell's, as indicated on the subjoined sketch.

A few years since (several witnesses say two or three years prior to April, 1902, and one says six or seven years prior to that date) a ferry, which was afterwards made free, was established on the bayou some distance to the westward of Bell's; and whether because it was free and Bell's was not, or because it afforded more convenient access to some parts of the city, the tide of travel turned out from the old main road at the point A (as indicated on the sketch), and followed the dotted line to the point C, otherwise designated as Dock's Ferry. This dotted line runs entirely through private property, part, and perhaps the greater part, of which belonged, at the date of the accident of which the plaintiff complains, to the defendant, and it does not appear that the defendant or any of the owners had anything more to do with the use thus made of their property than that they did not object to it. Nor does it appear that the parish authorities dealt with the road thus established as a public highway, or assumed any jurisdiction over it. It was nevertheless used, and continued to be used, by the public, without let or hindrance, until practically all the country travel passed over it, and that portion of the old road extending between Blind Bayou, at the point A, and Bell's ferry, was, in the same ratio, deserted, until in June, 1901, the police jury passed an ordinance declaring it abolished, and (so far as a mere declaration to that effect could accomplish it) established a new road along the line of the T. S. & N. R. R.

(indicated on the sketch by the words "Projected New Road"). For some reason, however (probably because of the difficulty in obtaining the right of way), the establishment of the new road went no farther than the declaration, and the two branches, from A to C and from A to Bell's, continued to be used as they had been used. In the meanwhile, the defendant had decided to utilize Blind Bayou for the bringing of an additional supply of water from Twelve Mile Bayou (with which Blind Bayou connects at the point E on the sketch), and, in connection with or in pursuance of that design, bought most, if not all, of the property through which Blind Bayou runs, including that over which the dotted line or road A–C passes, and began the conversion of the bayou into a canal. Among others, it purchased a tract, lying to the westward of Blind Bayou near its junction with Cross Bayou, from John Dixon. As, however, the vendor retained

some of his holdings in that neighborhood, from and to which he required ingress and egress, there was inserted in the conveyance from him to the defendant the following stipulation, to wit:

"The Shreveport Water Works Company further agree to construct and maintain across Blind Bayou, or any canal to be hereafter built by them, a bridge and approaches, at a point not to exceed 300 feet from where Blind Bayou now intersects Cross Bayou; said bridge to be strong enough and sufficient to meet the demands of ordinary wagon traffic; and to grant a right of way to and from said bridge, across any property that the Shreveport Water Works Company may own, to their boundary line or public thoroughfare."

The point thus indicated for the bridge was about that at which the road A–C crosses Blind Bayou, and, as the bayou at that point amounted to but a slight depression in

the ground, sometimes dry, or nearly so, the crossing was, at most, a ford. The defendant, however, put in a culvert, or did some work in the line of canal building, and, then, probably more for its own convenience than in compliance with its contract with Dixon, constructed a bridge, as a substitute for the otherwise boggy passage across the bayou, and it was this bridge that gave way beneath the plaintiff and his mule, with the results which are sufficiently set forth in the original opinion.

### Opinion.

It is not denied that the defendant and certain natural persons own the land over which the road A–C passes and upon which the bridge in question is built. On the contrary, the plaintiff alleges in his petition that both road and bridge were used by the public "with the permission and at the invitation of the" defendant. The road had, however, been used, at most, for six or seven years, and the bridge for but a few months.

The right of passage is a discontinuous servitude (Civ. Code, art. 727), and discontinuous servitudes, whether apparent or non-apparent, can be established only by title. "Immemorial possession itself is not sufficient to acquire them." Civ. Code, art. 766.

Applying this law, it has more than once been held by this court that, in the absence of proof of intention on the part of the owner to dedicate his property to public use, the mere use of the passage by the public, for however long a time, cannot supply a title or serve as the basis of prescription. Torres et al. v. Falgoust, 37 La. Ann. 500; Crossman v. Vignaud, 14 La. 173; Morgan v. Lombard, 26 La. Ann. 462; McCearley v. Lemennier, 40 La. Ann. 253, 3 South. 649; De Grilleau v. Frawley, 48 La. Ann. 184, 19 South. 151; Railroad Co. v. Mayor et al., 48 La. Ann. 1115, 20 South. 664. It is true that a provision in a contract between two individuals, or, as in this case, between a private corporation and an individual, whereby the one agrees to afford to the public a passage through his land, might be regarded either as evidence of the intention to dedicate such passage to public use or as a stipulation pour autrui. But in the contract between Dixon and the defendant there is no such provision, and both parties thereto distinctly repudiate the idea that their contract was intended to be so construed.

It follows from this that the bridge in question belongs to the defendant, that the plaintiff was a licensee by implied invitation thereon at the time that he was injured, and that his rights and those of the defendant in this suit must be determined upon that basis.

"When one opens a public way he impliedly licenses the public to use it; and so if he knowingly permits the public to use his land. leaving it open in such a way as to lead others to think that they are invited to use it." Am. & Eng. Enc. of Law (2d Ed.) vol. 18, p. 1133. "An implied invitation to enter may arise where one leaves his property open to the public in such a way as to lead the public to use it." Id. p. 1138. "When the licensee is invited to go upon the land, either expressly or impliedly, * * * the licensor assumes the obligation to see to it that the premises are in a reasonably safe condition, * * * the question of care being for the jury." Id. p. 1138.

Accepting the foregoing propositions as sound, and applying them to the facts in this case, the plaintiff, as one of the public, was invited by the defendant to make use of the bridge which it had constructed at the ford by means of which he was in the habit of crossing Blind Bayou, and he had the right to assume that the defendant had seen, and would see, to it that the bridge was in a reasonably safe condition. As it turned out, however, the bridge had been negligently constructed originally, and, so far as we are informed, had received no attention thereafter, and it gave way beneath the weight of the plaintiff and his mule, with the result that both were seriously injured. It cannot, therefore, be said that the bridge was reasonably safe; nor do we think that the defendant was entitled to notice of its condition at the time of the accident, since, as we understand the testimony, that condition was mainly attributable to the fact that at least one of the timbers, which, extending from bank to bank of the bayou, supported the floor of the bridge, was too short—a defect in the original construction of which the defendant must have been cognizant, and which was remedied when the bridge was replaced. Under these circumstances, the

case comes within the rules which have been stated above, and falls among a class of which there are many examples. Thus, in Tomle v. Hampton, 129 Ill. 379, 21 N. E. 800, it was held that where a man, by connecting it with the sidewalk, invites the public to use part of his land, he must use due diligence to keep it reasonably safe. And to the same effect are Sweeny v. Old Colony, etc., Co., 10 Allen (Mass.) 378, 87 Am. Dec. 644; Nicholson v. Erie R. R. Co., 41 N. Y. 525; and other cases cited in A. & E. Ency. of Law, vol. 18, p. 1137.

It is therefore ordered, adjudged, and decreed that the judgment heretofore rendered be now reinstated, and made the final judgment of this court.

NICHOLLS, C. J., dissents, and reserves the right to file reasons. Burbank v. Railroad Co., 42 La. Ann. 1156, 8 South. 580, 11 L. R. A. 720.

LAND, J., is recused in this case.