ATCHISON, T. & S. F. RY. CO. v. CITY OF SHAWNEE et al.

(Circuit Court of Appeals, Eighth Circuit. October 12, 1910.)

No. 3,297.

1. CONSTITUTIONAL LAW (§ 134*) — VESTED RIGHTS — CONTRACT OF MUNICIPALITY.

Under St. Okl. 1893, § 584 (Comp. Laws 1909, § 688), which confers express authority upon the councils of cities and towns to vacate streets, and provides that on such vacation the title shall revert to the owners of the adjacent property, and the decisions of the Supreme Court of the state thereunder that, when a street has been so vacated, it cannot again be taken for public use without just compensation to the owners, where a municipal ordinance granting right of way to a railroad company also, in consideration of the establishing of a division station at that point, expressly vacated portions of certain streets through and across the station grounds of said company, and the company duly accepted the ordinance as required by its provisions, and constructed its tracks and buildings, the ordinance constituted a contract protected from impairment by the city by the federal Constitution, and the city had no power to order one of such streets reopened across the railroad company's yards without instituting condemnation proceedings and paying the damage which the company would sustain.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 344; Dec. Dig. § 134.*]

2. COURTS (§ 282*)—FEDERAL COURTS—LAW IMPAIRING OBLIGATION OF CONTRACT—MUNICIPAL RESOLUTION.

A resolution of a city council, ordering a railroad company to open and put in condition for public travel a street through its station yards, previously vacated by an ordinance which constituted a contract with the company, where disobedience of such order subjected the railroad company to a penalty under the laws of the state, is a legislative act, which im-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pairs the obligation of the contract and entitles the company to relief by injunction in a federal court of equity.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 820–824; Dec. Dig. § 282.*]

3. MUNICIPAL CORPORATIONS (§ 657*)—VACATION OF STREETS—"VACATED."

A street is "vacated," within St. Okl. 1893, § 584 (Comp. Laws 1909, § 688), relating to the vacating of streets, when its character as such is destroyed, and it is thereafter held in private ownership, the same as the adjacent lots to which it has accreted.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 657.*

For other definitions, see Words and Phrases, vol.' 8, pp. 7254–7259, 7826.]

Appeal from the Circuit Court of the United States for the Western District of Oklahoma.

Suit in equity by the Atchison, Topeka & Santa Fé Railway Company against the City of Shawnee and others. Decree for defendants, and complainant appeals. Reversed.

Gardiner Lathrop (J. R. Cottingham, S. T. Bledsoe, and John Devereux, on the brief), for appellant.

J. H. Woods, City Atty., and W. M. Engart, Asst. City Atty. (B. B. Blakeney, on the brief), for appellees.

Before HOOK and ADAMS, Circuit Judges, and REED, District Judge.

HOOK, Circuit Judge. The Atchison, Topeka & Santa Fé Railway Company sued the city of Shawnee, Okl., and certain of its officers, to enjoin them from enforcing a resolution of the mayor and councilmen that a street within the bounds of the station grounds of the company be opened and put in condition for public travel. The trial court granted a temporary injunction, but at the final hearing and upon the same proofs it dismissed the bill. This change of view was probably thought necessary because of City of Des Moines v. Railway, 214 U. S. 179, 29 Sup. Ct. 553, 53 L. Ed. 958, then recently decided. The company appealed.

The railroad of the Santa Fé Company was built into and through the city of Shawnee and a division point established there by a predecessor in ownership, in consideration, in part, of the passage of a city ordinance granting rights of way over certain streets and alleys and vacating others for station grounds, etc. The correct construction of this ordinance is one of the questions in the case. The company contends that the ground in controversy, which was "Tenth street, from the center of Minnesota avenue to the east line of Pennsylvania avenue," was duly vacated by the ordinance, and the title thereupon reverted to the owner of the adjacent lots. On the other hand, defendants deny the power of the Legislature of Oklahoma to authorize such a disposition of a public thoroughfare, and also contend that, even if the power existed and was exercised, all that was in fact granted by the ordinance was a mere right of way, which did not withdraw the street from municipal control, nor exclude its use as such by the in-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

habitants of the city. The power of the Oklahoma Legislature is too plain for discussion. Express authority to vacate streets was conferred by the Legislature upon the municipal council, and provision was made in the law that upon a vacation the title should revert to the owners of the adjacent property. St. 1893, § 584; Comp. Laws 1909, § 688; Blackwell, etc., Ry. Co. v. Gist, 18 Okl. 516, 90 Pac. 889; Bullen v. Railway, 20 Okl. 819, 95 Pac. 476.

In the first of these cases it was expressly held that when a street had been vacated, and had become attached in title to the adjacent property as provided by the statute, it could not again be taken for public use without just compensation to the owners. The city ordinance in question in this case clearly shows by its title and context that both a right of way and a vacation were in contemplation and were separately dealt with. The first section granted to the railway company named, "its successors and assigns, the right to construct, maintain and operate all necessary tracks, turnouts and sidings over and across the streets, avenues and alleys," which were described. This was a mere right of way; but none of the highways described are involved in the present case. The second section provided "that the following streets, avenues and alleys through and across the station grounds of the said" railway company "be and the same are hereby vacated." This was followed by a particular description of parts of various streets and alleys, which, as the record shows, are embraced in the area comprising the terminal grounds of the company, and among them is the part of Tenth street in controversy. A railroad right of way along a street and a vacation of the street are wholly different things. In the former the highway in its public character continues, and the railroad is but a phase of the public use to which it is devoted. The highway still remains subject to municipal regulation. But when, under statutes like that of Oklahoma, a street is vacated, its character as such is destroyed, and it is thereafter held in private ownership, the same as the adjacent lots to which it has accreted. The intent of the city to vacate the part of Tenth street within the limits of the station grounds is so patent from the face of the ordinance that resort to the circumstances of its adoption is unnecessary. The grantee duly accepted the ordinance as its provisions required, constructed its tracks and buildings on the station grounds, and its contract rights so secured are protected from impairment and its property from appropriation without due process of law by the national Constitution. The purpose of the city, of which complaint is made, is the opening for public travel without compensation of a strip 80 feet in width through the very heart of the station grounds over the railroad tracks of the company. The serious consequences to the railroad use of the property are apparent. No proceedings in condemnation were instituted; no inquiry set afoot for ascertaining the loss and damage the company would undoubtedly sustain.

It is contended by defendants that the case is controlled by City of Des Moines v. Railway, supra. In that case all the parties were citizens of Iowa, and jurisdiction of the Circuit Court was invoked upon a federal question claimed to arise from the impairment, by a resolu-

tion of the municipal council, of its contract rights under an ordinance granting the use of the city streets for the operation of a street railway. It was also asserted that the resolution, if enforced, would take the property of the complainant without due process of law, contrary to the fourteenth amendment. The Supreme Court held the resolution was not a legislative act infringing the rights of complainant, but was a mere declaration by the city of its position in a controversy then going on, and a direction to its law officer to resort to the courts if its view was not accepted. The case was therefore dismissed for want of jurisdiction. In the case at bar jurisdiction is founded upon diversity of citizenship, but the question as to the character and effect of the resolution is nevertheless involved in the general equities of the case. The resolution instructed the mayor and city clerk to serve a written notice upon the company to open the street and put it in condition for travel within 30 days or steps would be taken by the city to compel it to do so. Embodied in the resolution was the form of the notice, as follows:

"You are hereby notified that by resolution passed by the mayor and councilmen of the city of Shawnee, state of Oklahoma, on the 25th day of September, 1908, you must place the crossing of your right of way over and across Tenth street in the said city of Shawnee in good condition for travel by the general public within thirty days from the service of this notice upon you, or the mayor and council of said city of Shawnee will proceed as by law authorized to compel you to do so."

We think this resolution is quite different from that in the Des Moines Case, and that it is substantially like that held in Northern Pacific Ry. Co. v. Duluth, 208 U. S. 583, 28 Sup. Ct. 341, 52 L. Ed. 630, to impair the obligation of a prior contract. It is more than a mere declaration of the attitude of the city and a direction to its law officer to bring suit in court. It not only denies the company has any right or title to the street arising from a lawful vacation, but demands that it shall assume the burden of opening it up and restoring it to public travel. The resolution is militant, not merely declaratory. What steps the city would take if the company failed to comply are not expressed; but they may be inferred from the provisions of an Oklahoma statute which imposes upon every railroad company doing business in the state the duty to construct and maintain in good condition for the use of the public the crossings at the intersection of its tracks and public highways, and prescribes a penalty of $25 per day for each day's neglect to do so after 30 days' written notice by the board of aldermen of a city. Comp. Laws 1909, § 7498. According to well-settled principles, a court of equity has jurisdiction of such a case as this.

The decree is reversed, and the cause is remanded for the entry of a decree for complainant as prayed for.