### MORGAN'S LOUISIANA & T. R. & S. S. CO. v. LOUISIANA PUBLIC SERVICE COMMISSION.

(District Court, E. D. Louisiana, Baton Rouge Division. February 15, 1923.)

#### No. 114.

1. **Railroads ☞97—State Public Service Commission held without jurisdiction to order a railroad company to build a viaduct in the city of New Orleans; "Supervise, govern, regulate, and control."**

     Complainant railroad company has for many years owned a strip of land 325 feet wide in the city of New Orleans, used for yard purposes. No street crosses the strip, but abutting streets stop at its boundary and are continued beyond it. By its charter the city of New Orleans is vested with all legislative, executive, and judicial powers in matters of local and municipal government, with express authority to open, keep open, and free from obstruction all streets, and to authorize their use by steam or electric railroads, and to require companies using them to keep in repair bridges and crossings over which their cars run. *Held,* that Const. La. 1921, art. 6, § 4, vesting the state Public Service Commission with "authority to supervise, govern, regulate and control all common carrier railroads," did not give the commission jurisdiction to order complainant to construct a traffic viaduct over its strip of land and tracks, extending along a street on either side, which involved, not only a taking of complainant's property for street purposes, but also a change of grade of the existing street, both of which powers are vested exclusively in the city.

     [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Supervise.]

2. **Railroads ☞73(4)—Extent of right of way granted over railroad right of way measured by contract by which it is granted.**

     Where a railroad company constructed a viaduct for traffic over its yards and tracks, where there was no street, under a contract with the city and a street railway company by which the cost was to be paid by the city and the viaduct maintained by the street railway company, the extent of the right of way granted is measured by the contract, and its use by the public can be continued only in accordance with the terms of the contract.

In Equity. Suit by the Morgan's Louisiana & Texas Railroad & Steamship Company against the Louisiana Public Service Commission. On motion by complainant for preliminary injunction. Granted.

Henry H. Chaffe, of New Orleans, La. (Denegre, Leovy & Chaffe, of New Orleans, La., of counsel), for plaintiff.

Wiley M. Barrow, Asst. Atty. Gen., for defendant.

Before BRYAN and KING, Circuit Judges, and FOSTER, District Judge.

FOSTER, District Judge. [1] This is an application by the Morgan's Louisiana & Texas Railroad & Steamship Company, hereinafter called the railroad, pursuant to the provisions of section 266, Judicial Code (Comp. St. § 1243), for an interlocutory injunction to

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

prevent the enforcement of an order of the Public Service Commission of Louisiana, hereinafter called the commission, the material part of which is as follows:

"Ordered, that the Morgan's Louisiana & Texas Railroad & Steamship Company be and it is hereby commanded and required to provide a safe and suitable traffic viaduct over across its tracks, facilities, and properties in the Fifth district of New Orleans (Algiers); said viaduct to commence at a point on Newton street (Algiers) at a sufficient distance from the properties of the M. L. & T. R. & S. S. Co. to provide suitable and proper grades for traffic thereover."

The bill alleges that the above order is illegal, unconstitutional, and unreasonable on various grounds, and challenges the jurisdiction and authority of the commission in the premises. The bill is lengthy and alleges the material facts hereafter referred to, and it is unnecessary to more fully state it. The question of the jurisdiction of the commission must be considered first.

The facts material to a decision in this case are these:

The plaintiff for 40 years has owned in fee simple, and has had in its possession, a strip of land in the city of New Orleans, in the Fifth district, known as Algiers, measuring 325 feet front on the Mississippi river by 24 arpents in depth, approximately 3,600 feet. This strip and adjacent land subsequently acquired is fenced and is occupied as a railroad yard, and contains some 20 odd tracks, roundhouses, and machine shops. No streets have ever been opened across the property, the streets at right angles on both sides stopping at the fence. Crossing the property at Patterson street, just back of the levee of the Mississippi river, is a viaduct for vehicular and foot passage. Another viaduct, for foot passage only, crosses the property at Eliza street, the third street back from the river. Five streets still further back, at Newton street, another viaduct crosses the property. These are the only rights of way that have ever been granted the public. The Newton street viaduct is about 2,000 feet long, and occupies a portion of Newton street on each side of plaintiff's property. It was constructed in 1907, pursuant to an agreement, incorporated in various ordinances, between the plaintiff, the city of New Orleans, and the Algiers Railway & Lighting Company, a corporation operating a street car system in Algiers and over the viaduct. The contract and its subsequent modifications provide for the payment by the city of the cost of erecting the viaduct and for the maintenance of same thereafter by the street railway company. At the present time the viaduct is much in need of repair, and, while passable for pedestrians, is not sufficiently strong to permit the operation of street cars over its entire length. The order sought to be enjoined relates to this viaduct.

The commission was created by article 6, §§ 3, 4, 5, 6, 7, and 9, of the Constitution of, 1921. Section 4 is material to the issues in this case. The pertinent part is as follows:

"The commission shall have and exercise all necessary power and authority to supervise, govern, regulate and control all common carrier railroads, street railroads * * * in the state of Louisiana, and to fix reasonable and just single and joint line rates, fares, tolls or charges for the

commodities furnished, or services rendered by such common carriers or public utilities, except as herein otherwise provided.

"The power, authority, and duties of the commission shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by the common carriers. * * *"

The only case in which the Supreme Court of Louisiana has had occasion to pass upon the above-quoted provision of the Constitution of 1921 is that of Gulf, C. & S. F. Ry. Co. v. La. Pub. Service Com., 151 La. 635, 92 South. 143. In that case the authority of the commission to order a railroad to construct an overhead crossing over a public road was questioned. The court held the order to be valid and said:

"To hold that the words 'supervise, govern, regulate and control' refer only to the relations existing between railroads, on one side, and shippers and passengers, on the other, as we understand plaintiff's contention to be, would in our opinion restrict the power and authority of the Commission within unreasonable limits, and affect its efficiency to an extent never intended by the Constitution."

The commission relies on the above decision as settling the question of its authority to make the order herein complained of in its favor. An examination of the case discloses, however, that the Supreme Court did not rest its decision wholly on the provisions of the Constitution of 1921. Act 132 of 1918, relating to the powers of the Railroad Commission, kept in force and made applicable to the commission by the Constitution of 1921, provides that the Railroad Commission shall have the power, on a certificate from the police jury of the parish that a railroad refuses so to do, to order any railroad crossing a public road to construct and maintain a suitable and convenient crossing, in accordance with standard specifications of the state highway department of the board of state engineers. In the said case the specifications had been furnished, the railroad had refused to construct, and the police jury had petitioned the commission for the order. It is significant that the Supreme Court also said:

"Nor do we believe that the act of 1918 and the order adopted by the commission by virtue of said act on June 1, 1921, in regard to the public crossing over the tracks of plaintiff, is an attempt to exercise control or regulation of public highways by the commission."

The Railroad Commission, predecessor of defendant, deriving its powers from the Constitution of Louisiana (see article 284, Const. 1913), had authority "to govern and regulate railroads," "to require all railroads to build and maintain suitable depots, switches and appurtenances, wherever the same are reasonably necessary at stations, and to inspect railroads and require them to keep their tracks and bridges in a safe condition."

There is no appreciable difference in the authority of the two commissions, yet the Legislature thought it necessary to adopt Act 132 of 1918. Apparently the Railroad Commission never tried to exercise the authority herein attempted. At least, no order of the Railroad Commission nor any decision of a court has been cited, and yet its powers had been as broadly construed as in the above case. Act 132 of

1918 has no application to the city of New Orleans. We do not consider the above case controlling, and are therefore at liberty to construe the law for ourselves.

[2] Analyzing the order complained of in this case, it is apparent the commission is seeking to exercise control over the streets of New Orleans as well as the power of eminent domain. Conceding that the police power can never be contracted away, and that a railroad may be required to construct a crossing over a street, or public road, at its own expense, these principles do not apply to the taking of the private property of a railroad for public use. It is true there is a viaduct already in existence, and the railroad has granted a right of way to the public over its property; but it has done so under certain conditions amounting to a contract. To change those conditions now would abrogate the whole contract and restore conditions as they were before. The public could not hold on to the right of passage over the railroad's property without compensation and repudiate the obligations they assumed, and in consideration of which the right of way was granted. Atchison, T. & S. F. R. Co. v. Shawnee, 183 Fed. 85, 105 C. C. A. 377; V., S. & P. R. Co. v. Monroe, 48 La. Ann. 1102, 20 South. 664.

Before the railroad could be required to build a viaduct as ordered, Newton street would have to be opened across the railroad property. This would require expropriation proceedings instituted by the proper authorities before a competent tribunal. Furthermore, the order requires the use of Newton street and the building of a structure, with consequent blocking of that street. This certainly is a regulation of the streets and the regulation of its grades.

The general rule regarding municipal corporations is that they have control of their own streets, with the right to fix grades, provide for pavement, regulate their use by steam and street railroads, and determine what structures in the nature of railroad tracks and appurtenances, telegraph poles, etc., may be erected and maintained on said streets. This is one of the ordinary governmental functions of a municipal corporation, exercised by virtue of the police powers delegated by the state. There is no doubt that the city of New Orleans possesses this power to the fullest extent. The present charter of New Orleans was granted by the Legislature by Act 159 of 1912. By it a commission form of government was created, to be administered by five commissioners elected by the people. Section 1 of said act, pars. (d), (e), and (f), provide as follows:

"(d) The legislative, executive and judicial powers of the city shall extend to all matters of local and municipal government, it being the intent thereof, that the specifications of particular powers by any other provision of this charter shall never be construed as impairing the effect of the general grant of powers of local government hereby bestowed.

"(e) The city shall also have all powers, privileges and functions which, by or pursuant to the Constitution of this state, have been, or could be, granted to or exercised by any city.

"(f) All powers of the city shall, except as otherwise provided in this charter, be vested in its elective officers, subject to distribution and delegation of such powers as provided in this charter or by ordinance."

Supplementing this, in enumerating the powers and duties of the mayor and commission council, the act further provides:

"Sec 6. The commission counsel shall have the power, and it shall be their duty, to pass such ordinances, and to see to their faithful execution, as may be necessary and proper:

* · * ,* * * * * * *

"3. To open and keep open and free from obstruction all streets. * * *"

"Sec. 8. The commission council shall also have power:

"1. To order the ditching, filling, opening, widening and paving of the public streets, and to regulate the grade thereof, and, by a two-thirds vote, to sell or change the destination of any street or property which is no longer necessary for the public use to which it was originally destined. * * *

"12. To authorize the use of the streets for railroads operated by horse, electricity, steam or motive power, and to regulate the same * * * and compel all such companies to keep in repair the street bridges and crossings through or over which their cars run."

Section 22, art. 14, of the Constitution of 1921, provides:

"The electors of the city of New Orleans * * * shall have the right to choose their public officers. This section shall not prohibit * * * the Legislature from appointing, or authorizing the appointment of, any board or commission with full authority in the city of New Orleans other than that of controlling the ordinary governmental functions of municipal government."

The above special provisions of the city charter were re-enacted practically verbatim by Act 93 of the Extra Session of 1921, held after the adoption of the Constitution of 1921.

The briefest consideration makes apparent the conflict of authority created by the order in this case. If the Public Service Commission has the right to order the erection of a viaduct on the streets of the city of New Orleans, it would have the right to demolish a viaduct already in existence and institute in lieu thereof a grade crossing. It would have the authority and jurisdiction to grant a right of way through the streets of the city. It might give permission to a railroad to run its trains, say down St. Charles avenue and through the heart of the business district, or it might order the replacement of the railroad tracks on St. Joseph street. The reasonableness of such orders would not affect the jurisdiction to make them, as every order of the commission must be measured by that standard.

The whole trend of the law of Louisiana, whether created by the Constitution or by act of the Legislature, is to set the city of New Orleans apart from the balance of the state in matters affecting its municipal government. It is significant that the Legislature has given her the specific power to authorize the use of the streets for railroads operated by steam, and to regulate them and compel them to keep street bridges and crossings in repair—this both by the charter of 1912 and the latest act of 1921, above referred to. It cannot be said at this day that the Legislature had reference to street cars operated by steam. It is significant that, while the commission is given the power to regulate street railroads elsewhere in the state, they can have no such power in New Orleans, except by the vote of her people. This is the plain construction of section 7 of article 6 of the Constitution of 1921, the provisions of which are unnecessary to

quote in full. It is significant that the Legislature, while having the right to create other boards to exercise authority in New Orleans, such as the dock board, can create no commission to exercise the ordinary functions of municipal government. Section 22, art. 14, Const. 1921, quoted above.

It is suggested in argument that the order should be construed as requiring the railroad to repair the existing viaduct and not to build a new one. The order is not susceptible of such construction on its face, and could only be given that meaning by the grace of the commission. Orders of this kind should be plain and specific, and require no construction, and certainly in no event should they be construed by reference to the mental attitude of the authority making them. But the principle governing is the same. It is in evidence that to build a new viaduct would cost approximately $150,000, and to repair the present one would cost about $51,000. In either event existing contracts would be abrogated.

If the jurisdiction of the commission to enter the order herein in controversy could be sustained, the right of the citizens of New Orleans to govern themselves in purely local matters would be seriously impaired. We can deduce no such intention from the provisions of the Constitution of 1921, or any other law of Louisiana. It follows that the commission was without jurisdiction or authority to make the order complained of.

The point is made in the answer that the order sought to be enjoined is not the final order of the commission. The order complained of was entered November 11, 1922, and is numbered 82. Thereafter the commission denied a rehearing, on December 1, 1922, and ratified, affirmed, and readopted its order No. 82, setting it out verbatim in the order overruling the application for a rehearing, but giving this proceeding the number 84. This is a pure technicality. It is plain there is but one order, though given different numbers at different times; but, if there be any distinction, the prayer for general relief will warrant the order of this court including both numbers.

Entertaining these views, it is unnecessary to consider the other questions presented by the pleadings. An interlocutory injunction will issue as prayed for.