## McPIKE v. AVERY et al.

No. 12189—Opinion Filed Dec. 15, 1925.

Rehearing Denied Sept. 21, 1926.

**1. Municipal Corporations — Vacation of Streets—Ownership of Land.**

The general rule is that whenever a street or avenue is vacated by a city council, the land embraced in such street or avenue at once attaches itself in the nature of an accretion to the adjacent and abutting lots in proportion to the frontage and becomes the private property of the adjacent and abutting lot owners.

**2. Same.**

Where the owner of an additin replatted same, and closed what was theretofore known as Laurel street, filed his amended plat, and the city in which the addition was located by its council passed an ordinance vacating Laurel street, and after Laurel street was vacated, the owner of the additin in his resurvey and plat of said addition described what had been Laurel street, between block 1 and 6 as lot 1, block 24, and thereafter he sold lots 9 and 10 to the plaintiff, describing them by lot numbers according to the recorded plat thereof, and thereafter he sold

30 feet off of the south side of block 24 to the defendant herein, held, that the half of the vacated Laurel street which lay alongside of lot 9 conveyed to the plaintiff did not accrete to lot 9, but became an independent part of the lots in said addition, and that the owner had a right to sell same to the defendant and he acquired title to the 30-foot strip involved in this action.

3. **Vendor and Purchaser — Delay in Furnishing Abstract—Recovery of Deposit by Grantee.**

Held, that three years was a reasonable time for the grantor to furnish abstract of title, and having failed to do so, the grantee was entitled to recover the $100 deposited.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Tulsa County; Redmond S. Cole, Judge.

Acti n by Mary S. McPike against Cyrus S. Avery and the Waldron Telephone Company. Judgment for defendant Avery, and plaintiff appeals. Affirmed.

.W. A. Sipe, Jr., for plaintiff in error.

George B. Schwabe, for defendants in error.

Opinion by MAXEY, C. The plaintiff in this suit seeks to recover a strip of ground 30 feet wide adjoining and coterminous with lot 9, block 1, Morningside addition to the city of Tulsa. The defendant Avery answered and deraigned his title to said 30-foot strip of land, showing that said 30-foot strip of land was originally a part of Laurel street in said addition. The parties entered into an agreed statement of facts, upon which the case was tried, with some additional testimony, which will hereafter be noticed. The agreed statement of facts, upon which the case was tried is as follows:

"It is stipulated and agreed by and between the plaintiff and the defendant Cyrus S. Avery by their attorneys of record, at the trial of the above-entitled cause, that the fellowing facts are admitted by both of said parties:

" (1) The Morningside addition to the city of Tulsa, Okla., involved in this suit, is a plat of lots laid out by the Union Land & Investment Company, who at that time was the owner of the land it comprised. The owner's plat of it, showing the manner of its subdivision into blocks, lots, streets, and alleys, and a deed by the owner dedicating the land embraced in such streets and alleys to the public forever, were duly recorded in the proper public office on October 14, 1907. On January 20, 1910, said addition was incorporated in and has ever since been a part of the city of Tulsa.

"(2) Lot 9 of block 1 in that addition is a rectangular lot situate at the northeast corner of the intersection of Agnes and Laurel streets, as shown on that plat, adjacent to and abutting on each, having a frontage of 25 feet on the east side of Agnes street and 140 feet on the north side of Laurel street. Lot 10 oₓ the same block is a lot of the same shape and dimensions as lot 9, adjoining it (n the north and having the same frontage on Agnes street, Laurel street is 60 feet wide, and from the time of its dedication as a public street, remained such until vacated by the city of Tulsa, as hereinafter stated. The strip of ground 30 feet in width and 140 feet long in controversy, adjoining lot 9 on the south, is the north half of that part of Laurel street coterminous with that lot.

"(3) Through successive conveyances of lots 9 and 10 (above mentioned) by the Unicn Land & Investment Company and its immediate and remote grantees, the fee simple title to those lots was vested on June 13, 1911, in one William D. Naus, who on that date sold and conveyed them by warranty deed to one H. V. Lowe for a consideration of $500. All of this consideration was paid by Lowe individually, but in the deed from Naus he took title in the name of the defendant Waldron Telephone Company. This deed is of record in the office of the county clerk of Tulsa county in deed records book 25, at page 386.

"(4) At the time of this conveyance to Waldron Telephone Company, all of its capital stock and assets were owned by Lowe, who had purchased them shortly after its incorporation. It was incorporated in the year 1905, under the laws of the state of Arkansas by other persons who were its last known officers. No corporate meetings of any kind were held or any business transacted by it after the purchase of its stock and assets by Lowe, who thought the effect of such purchase was to merge the corporation in him, and intended by the deed from Naus to it to vest himself with the legal and equitable title. In his judgment, the Waldron Telephone company became merely a trade name under which he transacted business, and he, individually, was the owner of the above-described lands, and he represented such to be the :acts to his grantees when he made the deeds hereinafter mentioned.

" (5) On May 17, 1912, the city of Tulsa, which at that time was and has ever since been a city of the first class, passed an ordinance vacating certain alleys and Laurel street in said addition, which provided that the land they comprised 'shall revert to and become the property of the owners of the real estate adjacent thereto on each side, in proportion to the frontage of such real estate on such alleys and streets.'

"(6) It is admitted by the plaintiff and the defendant. Mr. Avery, that the deed from William D. Naus vested in H. V. Lowe with

the equitable title to lots 9 and 10 above described, and that that company was nothing more than a trustee of the legal title for his benefit; also. that upon the vacation of Laurel street subsequent to such acquisition of title by Lowe, the title to the north half of Laurel street, on which lot 9 fronts, vested in him. So far as title to that strip is concerned, the only question in controversy between these parties is as to whether the deed by Lowe to the plaintiff had the effect of including the north half of what was formerly Laurel street contiguous to let 9, as well as lots 9 and 10. If it did, judgment quieting title should be rendered for the plaintiff, as prayed for in her petition. If it did not, judgment quieting title should be rendered for the defendant Cyrus S. Avery as prayed for in his cross-petition. All other issues raised by the pleadings in said action shall be the subject of proof at the trial."

In addition to the foregoing statement of facts, it was admitted on the trial that in January, 1912, the Morningside Addition to the city of Tulsa was replatted and an amended plat filed, which showed Laurel street closed, and the part of Laurel street that formerly lay alongside of lot 9 was platted on the amended plat as lot 1, block 24; and on the 17th day of May, 1912, the city of Tulsa, by proper ordinance, vacated Laurel street so as to conform to the amended plat, and that thereafter on the 1st day of October, 1912, the plaintiff herein bought lots 9 and 10 from H. V. Lowe, and the deed conveying said lots described them by metes and bounds according to the recorded plat, and also conveyances made backwards and forwards in an effort to straighten out the title to these lots, as some were made to the Waldron Telephone Company and others to H. V. Lowe, but these matters are all taken care of in the agreed statement of facts and need not be further noticed, as it is conceded that Lowe was the owner of all of the stock in the Waldron Telephone Company, and that it had lapsed from nonuser; and it is conceded Lowe was the real owner, and that he had the right to convey the title to the property mentioned in plaintiff's deed; on May 14, 1917, the Morningside addition executed and delivered to the defendant Cyrus S. Avery a warranty deed conveying the land in controversy in this case. It further appears from the record, that on the 15th day of March, 1917, R. L. Swope, acting for the defendant Cyrus S. Avery, entered into a memorandum agreement with the plaintiff, Mary S. McPike. A copy of said agreement is in words and figures as follows, to wit:

"Received of R. L. Swope, cashier's check No. 13748 on the Exchange National Bank of Tulsa, Okla., for the sum of $100 as partial payment on purchase price of lots 9, 10, 11 and 12 in block 5, and lots 9 and 10, block 1, and the north 30 feet of lot 1, block 24, all in Morningside addition to the city of Tulsa, Okla. Said purchase price being $5,500. Dated this 16th day of March, 1917. Signed: Dr. Mary S. McPike."

That upon the execution of said agreement, said Swope, as agent of the defendant Avery, paid $100 as a part payment on the purchase price of the lots therein described, among which are the lots in controversy in this suit. That said contract was never carried out, for the reason that the plaintiff, Mary S. McPike, was unable to furnish an abstract of title satisfactory to Avery and his attorney.

In the defendant Avery's answer and cross-petition, he sued for the $100 that he paid as part of the purchase price of the lots described in said contract, and on the trial of the case, the court filed its findings of fact and conclusions of law, and entered judgment in favor of the defendant Avery for the 30-foot strip of land in controversy, and gave judgment against the plaintiff, Mary S. McPike, for the $100 paid under the contract to purchase the lots above described. The plaintiff, Mary S. McPike, claims that the 30-foot strip of land in controversy, which was a part of Laurel street according to the original plat, upon vacation of said street, reverted to and became a part of lot 9 as an accretion. The defendant claimed that said street was closed in January, 1912, by an amended plat prepared and filed and by an ordinance passed by the city of Tulsa, on the 17th day of May, 1912, and that on October 1, 1912, the date that Lowe sold lots 9 and 10 to the plaintiff and described them as lots 9 and 10, according to the recorded plat of said addition, that said deed conveyed only lots 9 and 10, and that that part of said addition which was formerly known as Laurel street was shown on the amended plat filed in January, 1912, as lot 1, block 24.

The decision of the questions involved in this case is governed largely by section 4563 of Compiled Stats. of Oklahoma, 1921, which reads as follows:

"Streets and Alleys. The council shall have power to annul, vacate or discontinue, or to grant to any public use any street, avenue, alley or lane, whenever deemed necessary or expedient: Provided, that all damages sustained by the citizens of the city or the owners of property therein, shall be ascertained as provided by law for the condemnation of property for railroad purposes: Provided, further, that whenever any street, avenue, alley or lane shall be

vacated, the same shall revert to the owners of real estate thereto adjacent, on each side, in proportion to the frontage of such real estate, except in cases where such street, avenue, alley or lane shall have been taken and appropriated to public use in a different proportion, in which case it shall revert to adjacent lots of real estate in proportion as it was taken from them; Provided, that when in the opinion of the council of any such city it is necessary to re-open such alley, they may order such alley opened without expense to the city."

The ordinance of the city of Tulsa vacating Laurel street is as follows:

"Be it ordained by the Board of Commissioners of the City of Tulsa, Okla.

"Section 1. That the alleys in block 4, 9, and 10 of Morningside addition to the city of Tulsa, Okla., according to the duly recorded original plat thereof, filed for record in the office of the register of deeds of Tulsa county, Okla., on the 14th day of May, 1912, and Laurel street in said addition, according to said original plat, be and the same hereby are vacated.

"Section 2. That the land now contained in the alleys and streets described in section 1, hereof shall revert to and become the property of the owners to the frontage of such real estate on such alleys and streets.

"Section 3. That all ordinances and parts of ordinances in conflict with provisions of this ordinance, in so far as such conflict exists, be and the same hereby are repealed.

"Section 4. That an emergency exists for the preservation of public peace, health and safety, by reason whereof this ordinance shall take effect from and after its passage, approval and publication.

"Passed and the emergency clause ruled upon separately and approved this 17th day of May, 1912.

"Approved this 17th day of May, 1912."

This section of the statute and the ordinance passed by the city of Tulsa vacating said street are relied on by both parties, and the construction of this section and the the ordinance, together with the agreed statement of facts upon which the case was tried, will determine the rights of the parties to this strip of land.

The 6th paragraph of the agreed statement of facts is as follows:

"So far as title to that strip (i. e., the vacated street is concerned), the only question in controversy between these parties is as to whether the deed by Lowe to the plaintiff had the effect of including the north half of what was formerly Laurel street, contiguous to lot 9, as well as lots 9 and 10. If it did, judgment quieting title should be rendered for the plaintiff, as prayed for in her petition. If it did not, judgment quieting

title should be rendered for the defendant Cyrus S. Avery, as prayed for in his cross-petition."

The leading case cited by plaintiff in error, in support of her contention that the conveyance of lot 9 by lot and block designation according to the recorded plat, conveyed the north half of Laurel street as an accretion to the lot, is the case of A., T. & S. F. Ry. Co. v. Patch, 28 Kan. 470. In that case, in an opinion by Justice Brewer, it was so held. The statute of Kansas, somewhat similar to our statute, is set out in the opinion:

"Whenever any street, avenue, alley or lane is vacated, the same shall revert to the owners of real estate thereto adjacent on each side, in proportion to the frontage of such real estate; * * * Provided, that when in the opinion of the council of such city, it is necessary to reopen such street, avenue, alley or lane, they may order the same opened without expense to the city. * * *"

This court, in the case of Blackwell, Enid & S. W. Ry. Co. v. Gist, 18 Okla. 516, 90 Pac. 889, concluded that our statute on the subject (section 4563, C. S. 1921) was taken from Kansas and adopted the Kansas case as a construction of the statute, and in Edwards v. Smith, 42 Okla. 544, 142 Pac. 302, a similar conclusion was reached. In the above cases in this court, the identical question was not under consideration, as in this case or in the Kansas case. Justice Brewer decided the Kansas case on the peculiar statute of the state of Kansas. He pointed out that other courts, on statutes something similar, had reached a different conclusion. The proviso to the Kansas act reads:

"That when in the opinion of the council of any such city it is necessary to reopen such street, avenue, alley, or lane, they may order the same opened without expense to the city."

It will be observed that under the proviso of the Kansas statute, after the street has been vacated by an ordinance of the city council, it may thereafter again be opened without expense to the city. On this language it was held that it became an accretion to the lot. This proviso does not apply to our statutes except in the case of the vacating of an alley. When an alley has been vacated by an ordinance of the city council, it may be reopened without expense to the city. If we were considering the question of vacating of an alley, we think the Kansas case would be, at least, persuasive. The proviso of section 4563, which was in force at the time this street was vacated, read as follows:

"Provided, that when in the opinion of the council of any such city it is necessary to reopen such alley, they may order such alley opened without expense to the city."

It will be observed that no provision is made by this language for reopening a street, which has been vacated, without expense to the city.

Section 4563 has been brought forward from the 1890 Statutes. An investigation of the original bill, as passed by the first territorial Legislature, reveals that section 4563 was section 48 of Council Bill No. 76, entitled:

"An act providing for the incorporation and government of cities of the first class."

That act was introduced and passed as an original bill, copied largely from the Kansas statute. The bill is practically a copy. Section 48 appears to be in all particulars practically the same as the similar section of Kansas, except as to the proviso The proviso is eliminated. The provision which authorizes the reopening of any street, avenue, or lane without expense to the city and only authorized the reopening of an alley without expense to the city.

The 1923 Legislature, by chapter 30, Sess. Laws 1923, has, in different language, enacted in substance the Kansas statute. It provides that it shall be the duty of the council or other governing body to reopen a street, avenue, alley, or lane, theretofore vacated or discontinued, except where the same has been acquired or vacated for railway purposes, upon the petition of the owners owning more than one-half the property abutting on the street, without expense to the city. But this section was not in force at the time of the transaction involving this case.

For the reasons stated, we think the Kansas statute is not controlling, and that this court, in its former opinions, erroneously assumed that the proviso of our statute was similar to that of the Kansas statute.

While the cases above cited from this court follow the Kansas case above cited, in some of them the facts are so different from the case at bar that they are not applicable here.

The trial court took this view, that when the owners decided to replat and resurvey the addition so as to close Laurel street and did resurvey and replat the addition showing Laurel street closed, and after filing the amended plat, the city of Tulsa by proper ordinance vacated said street. This was five months or more before Lowe deeded lots 9 and 10 to the plaintiff, the deed describing

them as lots 9 and 10, Morningside addition to Tulsa, according to the recorded plat thereof; and at that time, the part of the addition that formerly was Laurel street, or that part of it between blocks 1 and 6, according to the plat then in existence and on file, described that part of Laurel street as lot 1, block 24. At the time the plaintiff bought lots 9 and 10 and for five months prior thereto, there was no Laurel street, and that part that had formerly been Laurel street had been platted and blocked the same as the other part of said addition; and the view the court below took of this feature of the case is, that the replatting of said addition and the vacation of the street long prior to the time plaintiff bought lots 9 and 10 takes the case out of the rule laid down in the Kansas case and the cases from our own court, and that lot 1, block 24, was the same as any other block or lot, and plaintiff must have known at the time she purchased it that it was not a street.

The authorities are somewhat divided on the question, as to whether in cases of this kind the person who buys a lot abutting on the former street and takes a deed describing the lot bought by metes and bounds without any reference to that part of the street, is bound by the description. It would seem, from these decisions, that a distinction is drawn as to the presumption, where the highway has been vacated before the conveyance of the land. It is held in some of the cases that where a street has been legally vacated before any lot has been transferred, the reasons for imputing or presuming an intention to transfer the title clear to the center of the street has ceased, the proprietor holding the land free from the easement as land when he parts with the lots abutting it, and that title to a tract of land accurately described by metes and bounds on the plat passes, but does not include a distinct parcel.

In Jackson v. Hathway, 15 Johns (N. Y.) 447, 8 Am. Dec. 263, Platt, Justice, says:

"It would be absurd, speaking of a road adjoining land passed by grant, to allow the fee of one piece of land not mentioned in the deed to pass as appurtenant to another distinct parcel which is expressly granted by precise and definite boundaries."

In the case of Atchison, T. & S. F. Ry. Co. v. City of Shawnee, 183 Fed. 85, the court makes a distinction between a railroad right of way along a street and a vacation of the street. In the former, the highway in its public character continues, and the railroad is but a phase of the public use to which it is devoted. The highway still remains sub-

ject to municipal regulation. But when, under statutes like that of Oklahoma, a street is vacated, its character as such is destroyed, and it is thereafter held in private ownership.

In the case of Overland Mach. Co. v. Alpenfels (Colo.) 69 Pac. 574, it was held that it is immaterial in what order or time such transfers are made. If the strip was granted before the lots, the intention would be certain; if afterwards, equally clear. What had been a street would be mere land, and when the reason for the rule ceases, the rule itself should cease.

In White v. Jefferson, 110 Minn. 276, 124 N. W. 373, 32 L. R. A. (N. S.) 778; Hagan v. Bolcom Mills (Wash. 1913) 133 Pac. 1000 · Elliott v. McIntosh (Cal. 1919) 183 Pac. 692, it is held that where the street is vacated before the lots abutting on it are sold, that the street does not accrete to the adjacent lots.

The findings of fact and conclusions of law by Judge Cole show that he had a thorough understanding of the case, and we have examined the record in connection with the findings of fact and conclusions of law, and find that the findings of fact are amply supported by the facts and circumstances surrounding the case, and that his conclusions of law are sustained by the authorities, and we think that the judgment of the court finding that the defendant Avery is the owner of the strip of land in controversy is right, and should be affirmed.

As to the judgment for the $100 that Avery paid on the contract of purchase with the plaintiff, it appears from the record, that it was nearly three years from the time that the contract was entered into and the money paid before the plaintiff, Mary S. McPike, made her final effort to clear the title to the land described in the contract, and we think that a reasonable time for a person to have to clear title, and we think the trial court was right in rendering judgment in favor of Avery for the $100 he had advanced. On the whole case we recommend that the judgment of the trial court be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 28 Cyc. p. 847; anno. 26 L. R. A. 659; 18 A. L. R. 1008; 13 R. C. L. p. 78; 3. R. C. L. Supp. 9: 4 R. C. L. Supp. 798. (2) 28 Cyc. p. 847. (3) 39 Cyc. pp. 1521, 2002; anno. 43 L. R. A. (N. S.) 47; 27 R. C. L. p. 512.