No. 9063.

JEAN TORRES ET AL. VS. FELIX FALGOUST.

The dedication of property to public use must appear by evidence so conclusive as to exclude all idea of private ownership.

So where a road has been used by the public for thirty or forty years by the mere sufferance or tolerance of the owners of the land which it traverses, such use does not, of itself, establish the formal assent required to prove a dedication and divest the title of such owners.

The Act 63 of 1868, entitled an act relating to public roads, is unconstitutional and void.

APPEAL from the Twenty-second District Court, Parish of St. James. *Cheevers*, J.

*Robt. G. Dugué* for Plaintiffs and Appellants.
*Sims & Poché* for Defendant and Appellee.

| | |
|---|---|
| 37 | 497 |
| 48 | 195 |
| 48 | 1115 |
| 37 | 497 |
| 111 | 84 |

The opinion of the Court was delivered by

TODD, J. The plaintiffs allege, in substance, that a certain road commonly called "Manche," running through their lands and those of defendants, is a public road, and that it had been opened and dedicated to public use for forty or fifty years. They further charge that, at a point where it traverses the defendant's land the road had been rendered impassible by a hole; that defendant refused to fill up this hole or to permit others to do so, and threatened to build a fence across the road if any attempt was made to fill it.

They asked and obtained an injunction, restraining the defendant from hindering them from repairing the road, and prayed that it be decreed to be a public road.

The defendant Falgoust answering, after the general issue, specially denied that the road where it crossed his land, was a public road, but averred that it was his own private property.

There was judgment for defendant in terms corresponding with the allegations and prayer of his answer, and the plaintiffs have appealed.

This road has been for years the fruitful source of strife and contention among the citizens of a locality in the parish of St. James, known as the Vacherie settlement. It seems to have engendered the bitterest animosities, and in a great measure destroyed the peace and quiet of a neighborhood noted hitherto for the thrift, industry and good order of its people. The dispute over the road has been attended by injunctions and counter injunctions, rules for contempt, prohibitions, etc., resorted to to sustain or favor the respective pretensions of the parties. Some of these proceedings have reached this Court on appeal, but a recapitulation of them would throw no light on the merits of this controversy which we have now to determine, and is, therefore, unnecessary.

The sole matter for our determination is, whether the road in question is or not a public road. The trial of this issue occupied in whole or in part several terms of the district court, and a host of witnesses on each side appeared, whose testimony alone fills up nearly one thousand pages of the transcript. We have faithfully perused and considered the whole of it, although much of it might have been dispensed with, since it had no material bearing on the gist of the controversy.

From this mass of conflicting testimony and conflicting opinions, we gather these few salient facts:

That somewhere between 1830 and 1840, a settlement was commenced subsequently known as the "Vacherie" or Vacherie settlement, about

four miles from the right bank of tne Mississippi river, in the rear of the plantations bordering on said river, and lying partly in the parish of St. James and partly in St. John the Baptist. It was then all in the woods. Shortly after the first settlers came, they marked out and opened a neighborhood road across the lands of the settlement, which were then nearly through the woods, and thereby made an outlet or passage towards the plantations on the river. This was the beginning of the road now in dispute. Gradually as the lands were cleared by the different proprietors and plantations established from time to time, through a series of many years, the inclosures were made with reference to this road, the several land owners building their fences and constructing their ditches on each side of it, so as to leave the same open the usual width for travel and as a passage-way through the settlement to the road.

Thus, in time, the entire road for a distance of one and a half miles was fenced in and became a lane, by which name it was chiefly designated and is so mentioned in the pleadings and spoken of by the witnesses. This was its condition when this suit commenced.

This lane extended from what was known as the old Vacherie road, laid out in 1849 and subsequently abolished, to the new Vacherie road, established in 1870, and both leading from the settlement to the Mississippi river. As the population increased and the community advanced in prosperity, and their plantations were enlarged, the road became a great convenience and was the main thoroughfare for hauling off the products of the settlement, consisting chiefly of sugar cane and tobacco, to the river. The only interruption shown to this common use of the road occurred in 1864, when one end of the road was inclosed by fences extended across it by a manager of one of the front plantations on the river, but which were removed shortly after the close of the war, and the road left free to the use of the public, as before, which continued up to the institution of these proceedings.

During all this time, however, there seems to have been no ordinance establishing or recognizing this road as a public road, and no hands assigned or money applied by the police juries to the working or improvement of it. There is also no mention of the road made in the titles to the land which it traverses; and from time to time some of the owners of these lands, in conversations, have spoken of the road as their private property and indulged in threats of closing it.

On the other hand, a large number of witnesses, and among them some of the proprietors of the land situated on the line of the road, declare that it is and always has been regarded as a public road.

Under this state of facts, is the road in question to be viewed and held a public road?

The plaintiffs' counsel contends that the facts recited touching the origin and establishment of the road, and the uninterrupted free use of it by the public for so many years under the law, conclusively prove its dedication to the public and fixes its status as a public road.

On the other hand, the counsel of the defendants hold that public roads must be established under the provisions of the Act of 1818, now comprising Art. 3368 et seq., Revised Statutes, that is, by the authority of the State or of the police juries of the parishes, or by dedication to public use by the owner or owners of the land which they traverse, the dedication to be in writing or evidenced by a plan or plot.

There being no pretence that this road was laid out by any competent or legal authority, State or parochial, the question to be determined is whether it has become public by dedication to public use.

The right of passage over land urban or rural, is, as termed by the code, a discontinuous servitude.

Article 727 declares: "Servitudes are either continuous or discontinuous. Continuous servitudes are those whose use is or may be continual without the act of man.

Such are aqueducts, drain, views and the like.

Discontinuous servitudes are such as need the act of man to be exercised.

Such are the rights of passage of drawing water, pasture and the like."

Art. 776: " * * * Discontinuous servitudes, whether apparent or not, can be established only by a title.

Immemorial possession itself is not sufficient to acquire them."

The above articles would seem to imply that a discontinuous servitude, such as the right of way or passage, must be acquired by some kind of a title or means independent of its exercise. That is, that the mere use of the passage by the public for however long a time, cannot supply a title or serve as the basis of prescription. The evident reason of this is that such use is precarious, not continual, but interrupted, constituting what is termed by the code a discontinuous servitude.

One of the earliest cases directly on this point was that of Crossman vs. Vignaud, 14 L. 173, in which the court seems to have adopted this construction of the above articles. The subject of controversy in that case was an open alley-way between two contiguous lots in the town of Natchitoches, nineteen feet in width and embracing a part of both

lots. This alley had been used by the public for thirty or forty years; buildings had been erected by the successive proprietors fronting on it. The owner of one of the lots was proceeding to close the alley, when he was enjoined therefrom by the owner of the other lot, on the ground that it was a street or highway dedicated to the public, citing in proof of such dedication the free and unrestricted use of it by the public for so great a period of time, with the consent of the original and successive owners of the property. There was judgment in the lower court for the plaintiff.

In deciding the case this Court used the following language (quoting):

"The plaintiffs contend for the affirmance of this judgment on two grounds: first, that the alley, *being left open to public use,* is, by its *destination, public;* second, that the defendants, having acquiesced in the passage by the public, and suffered the plaintiffs to build thereon, without setting up their title, have lost their right, if any they ever had. *We think neither of these positions tenable.*

"In support of the first they have referred us to the cases of the City of Cincinnati vs. White's Lessee, 6 Peters 435; Mayor, etc., of New Orleans vs. the United States, 10 ibid. 712; and the opinion of Judge Martin in the case of De Armas vs. the City of New Orleans, 5 La. Reports 132.

"Had the *plan* of the town of Natchitoches (a portion of which is in evidence) *exhibited this space as an open lane, or had the primordial titles so treated it,* these cases would have applied; but it is admitted that the defendants have shown a good title to fourteen feet. The town surveyor deposes that no such space had been marked on the plan; that, though all the other streets have been named, this has been nameless; and it is shown by the act or deed under which the plaintiff holds, that the boundary is the defendant's line, thus including the remaining five feet of the alley in his lot.

"*These circumstances, so far from showing any destination to public use, leave on our minds the conviction that the property was private,* and that this case does not fall within the rule invoked.

\* \* \* \* \* \* \* \* \* \*

"If he, or if the public, could acquire a right of passage thereon, it must be by *some grant* of the defendant—*some forced expropriation made under legal formalities, and for a compensation fixed and paid, or by prescription.*

"Neither of the first are pretended, and we think, with the defendants' counsel, *the question is,* have the plaintiffs (*i. e., the public*) made out a right of passage by prescription? The Louisiana code, Art. 723,

declares: 'Interrupted servitudes are such as need the act of man to be exercised; such are the *rights of passage,* of drawing water, pasture and the like.' Article 762 provides that 'continuous non-apparent servitudes and interrupted servitudes, whether apparent or not, can be established only by a title.' 'Immemorial possession itself is not sufficient to acquire them.'"

In the case of Morgan vs. Lombard, 26 Ann. 462, the principle enunciated in this case was re-affirmed.

We make the following extracts from the opinion in the last mentioned case.

"The plaintiff, alleging that the passage or alley running from the Bayou road to Columbus street is a public thing, enjoined the defendant from fencing it or obstructing the use of it by the public. The defendant claims that the property belongs to him."

\*          \*          \*          \*          \*          \*          \*          \*          \*          \*

There is no evidence in this record of an intention of the owners of said land to dedicate it to the public use. The mere fact that for thirty or forty years the public was permitted to pass over this ground would not of itself constitute the place a *locus publicus.* See also 18 L. 286; 19 L. 71; 3 Ann. 282.

Whilst the decisions referred to above do not all support in so many words the contention of the defendants, that a dedication to the public of a passage can only be established by a written title or its equivalent, as a plot or plan, they all concur in this, that such dedication must be shown by evidence so conclusive as to exclude all idea of private ownership; and after a critical examination of all the decisions of our own courts on this subject, we have been unable to find one where a dedication of the kind has ever been recognized unless founded upon some written act or authorized plan.

The two cases cited from the Louisiana reports by the plantiff's counsel in support of his proposition that the long continued use of a road by the public, without objection from the owner of the land, affords of itself sufficient proof of dedication, being the cases of Pickett vs. Brown, 18 Ann. 560, and Shreveport vs. Walpole 22 Ann. 526, were cases where the dedication was shown by the plan of the city, and an act of partition among the original owners of the lots.

The two decisions from which we quoted above show that such dedication cannot be inferred from mere *user* alone; and apart from such user or beyond it we find no evidence that would conclusively establish such dedication.

There are, however, a number of decisions from other States that evidently favor his pretensions, but we must be governed by our own laws and jurisprudence on the subject.

It must be noted that when the road in controversy was first begun, the settlement was new; no public road had been opened by legal authority, and the necessities of the settlers demanded some passage to the river. It might be reasonably inferred that the act of the first settlers in allowing this passage over their lands was for their mutual convenience and accommodation, or an act of reciprocal neighborhood, to last only till the proper provision for a public road or highway could be made by the State or parochial authority. This was subsequently done by laying out a road known as the old Vacherie road, followed by the new Vacherie or section line road, as termed in the pleadings and evidence. A significant fact corroborative of this inference is to be found in the circumstance that in all the deeds and acts of sale, this road was treated as private property, there being therein no designation of it as a public road, and in fact, no mention of it at all.

Again we see that a fence was built across the road and remained there for more than a year without complaint from any one, or charge that the fence was an obstruction to a public highway. There is also the further fact that the author of defendants' title and the defendant himself and other land owners along the line of the road denied that it was a public road, and threatened from time to time to close it; and this was particularly the case after the police jury had established the section line road, which ran parallel to the road in controversy and only at a distance from it of about half a mile. Why was this new road established, leading in the same direction and toward the same objective point, if the lane, as it is called, was a public highway?

All these considerations make us conclude under the facts and law discussed above, that the road in question was not a public road.

The plaintiffs, however, further contend that it became a public road under the operation of the act 63 of the General Assembly passed in 1868.

The first section of that act reads:

"That in all the parishes of this State in which public roads are controlled and regulated by police juries, that all roads which have been open and in common use twelve months previous to the passage of this act shall be and are hereby declared to be public roads, and shall not be closed, obstructed or changed without the consent of the contiguous property owners and the approval of the police jury."

If this act is a valid act, it would determine the controversy; for it is unquestioned that the road in dispute had been open and in common use more than twelve months before the passage of this act. It is, however, urged that this act is unconstitutional and void, because violative of the Federal and of the State Constitutions, wherein they forbid the divestature of private property without due process of law and adequate compensation, and, also that article of the State Constitution of 1868, forbidding the passage of retroactive laws.

We are satisfied, after due consideration, that the act is amenable to both the above objections. It does purport to take away by a simple legislative fiat private property—as this road, which up to the moment of the passage of the act belonged to the defendant—and without adequate or previous compensation or the slightest provision therefor. It is not susceptible of any other construction.

Article 497 of the Civil Code declares " that no one can be deprived of his property, unless for some purpose of public utility, and on consideration of an equitable and previous indemnity and in a manner previously prescribed by law."

In the case of the Police Jury of Jefferson vs. D'Hemecourt, 7 R. 509, it was held that this article—above quoted—has a constitutional sanction and cannot be violated by parochial ordinances or even by State legislation.

And in the case of Knox vs. Police Jury, 27 Ann. 204, it was declared that the payment of adequate compensation to the owner, was a condition precedent to the right of a parish or its authorities to expropriate land for a highway.

The statute is also essentially retroactive in its character. Irrespective and apart from the act, the failure of a land owner to close a road on his premises, from whatever cause, or his bare permission to keep it open for a year, could not be regarded as calculated in the slightest degree to affect or impair his ownership of the land traversed by the road, yet by this act, such previous or past omission and permission, without any legal significance of themselves, are given the potent effect of stripping him of his title to the land and giving it to the public.

The enormity of such a proposition can be best illustrated by the circumstances or conditions existing at the date of the act in question. It is notorious that at that time in some portions of the State the dire effects of the then recent war were plainly visible in the general devastation and destruction where the armies had passed. Everywhere

were to be seen ruined estates, plantations laid waste, fences destroyed. In many instances the established roads were abandoned and shorter routes or cuts adapted by the traveling public over and across these abandoned plantations. The owners, perhaps, were absent, or if present, were unable to rebuild their fences and powerless to prevent this informal making of new roads over their lands, yet notwithstanding they were deprived of all title to the lands where this unlicensed use or trespass had continued for one year.

We have had this case under advisement a long time to enable us to make a complete examination of the immense transcript and to give a thorough consideration of the legal questions involved in it of so much public interest, and the result of this investigation and of our deliberations is the conclusion that the road in controversy is not a public road and that the case is with the defendants.

Judgment affirmed.

POCHE, J., recuses himself, having been consulted as counsel.

---

## ON APPLICATION FOR REHEARING.

BERMUDEZ, C. J. The appellants charge that the judgment here rendered is erroneous in *four* particulars which we will consider *seriatim*.

### I.

It is not correct to say that, in the decision of this cause—in which *public* rights are involved—we have been governed by and have applied laws relative to servitudes which regulate *private* individual rights.

Neither is it correct to state that we have held that the rights invoked for the public, to the use of the road or land in controversy, could be established only by written evidence, to the exclusion of any other proof.

The rights set forth are made to rest on an averment of *dedication* to the public. In order to succeed, the plaintiffs should have proved the alleged dedication by either the quality or quantity of evidence required and adduced in such cases, which is either written proof, or when parol, of such significance and weight as to be equivalent to documentary evidence. In this they have signally failed.

We did not rule that in the absence of written evidence, no other proof could be admitted. We said simply, that in those cases which we had examined and in which dedication had been claimed, the proof adduced was formal and direct, such as results from authentic acts or from plans or plots.

The jurisprudence of this State is so firmly settled on the subject that it cannot be questioned.

It is that to support the dedication of property to public use, it must affirmatively appear that the ground has been used with the assent of the owner for such public purposes, in such a manner as to exclude the idea of private ownership, and for such a length of time that the public accommodation and the rights of individuals would be seriously affected by the interruption of the use, or else it must appear unequivocally by some plan or writing that the owner has made a dedication —to violate which, would involve a breach of faith.

No one is presumed to give away his property. The burden is on him who avers a divestiture of ownership to prove it clearly.

It is true that we referred to the laws on the subject of servitudes. For doing so we had good authority, as among those laws there exist provisions concerning *public* roads, which themselves are generally nothing but highways or passages on the lands of individuals, in favor of the public, either by virtue of some general law or of some private concession;—the individuals retaining the ownership or *fee* according to circumstances.

We showed that the plaintiff had no title to the road, as they had proved it to be neither a *public* nor a *private* road. This was essential for a recovery.

## II.

It is not because numerous bills are found in a record, that the court is bound to consider each and every one of them. There are instances in which bills are taken which are not entitled to notice, particularly in litigated cases in which much feeling is involved.

In the present instance it is claimed that we did not pass upon the bills taken to the exclusion of evidence to prove dedication.

The ground upon which the district judge declined to receive the evidence is, that it was *irrelevant*.

The fact is, that it was designed to prove acts and words which are abundantly established, though abundantly contradicted or overbalanced.

As we considered that the judge was right in not admitting the evidence, which, at best, would only be cumulative and unnecessarily so, that, even if the evidence had been received, the result would not be different, we deemed it unnecessary to notice the bills.

## III.

We thought that the section line road had been established by public authority and we inferred that it was a good reason to conclude

that the road now claimed to be a *public* road was not thus considered by that authority. But, whether the section line road was thus created or not, is immaterial after all, for the reason that the plaintiffs had to make out their claim to the road as a public road, by sufficient legal evidence, and that reliance on the creation of the section line road by private authority, could not have proved a tittle to establish expropriation by dedication or otherwise. We are still of that opinion.

## IV.

It is true that Act 63 of 1868, which was pronounced unconstitutional, was not charged with being such by the pleadings. The plaintiffs it was, who advanced its existence and validity in argument, thinking it could assist them in the recovery. They invited an expression of opinion as to its binding force and effect on the defendants. It was thus made by the plaintiffs themselves an important factor in this controversy. The defendants joined issue and we deemed preferable to acquiesce and set at rest the question of the validity of a law of such vital importance to the public.

We have devoted again much attention to a re-examination of the merits of the case; we have considered every point made in the application for a rehearing, and, after due deliberation, could reach no conclusion to alter our previous views.

*Interest reipublicæ ut sit finis litium.*

Rehearing refused.