José Martínez Rodríguez, Plaintiff and Appellant, *v.* Central Cambalache, Inc., Defendant and Appellee.[*]

No. 5987. Argued November 14, 1933.—Decided March 8, 1935.

[*] Note.—On appeal to the U. S. Circuit Court of Appeals for the First Circuit, this decision was affirmed. See 82 F. (2d) 37.

*Luis Mercader* for appellant. *Félix Santoni* for appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

██ This is an appeal taken by the plaintiff from a judgment dismissing his complaint on the merits in which he alleges to be the owner of certain rural properties, free from any servitude of right of way in favor of the defendant, for which reason he prayed the court for an order directing Central Cambalache to remove the railroad track which it has over the said properties.

The complaint referred to three tracts of land, the first measuring 7 acres, the second 1.56 acres, and the third 4 acres, but after the answer to the complaint had been filed the plaintiff moved the court to consider him as having withdrawn his claim in regard to the 7-acre tract and after the trial of the case had commenced the district court, with the acquiescence of the defendant, granted the motion. For this reason the complaint was confined to two rural tracts, one containing 1.56 acre and the other 4 acres, both of them located in the ward of Sabana Hoyos of the municipal district of Arecibo.

The defendant is the private corporation Central Cambalache, which in its answer to the complaint made a general denial of the averments thereof and pleaded several defenses.

The complaint was filed in May 1930, and the case was tried in March 1931. The plaintiff, in order to prove his title to the two tracts, introduced at the trial two judicial decisions rendered on April 15, 1930, declaring the plaintiff to be in possession of the 1.56 and 4-acre tracts, he having purchased the former in 1929 from Remigio Martínez Badía, who had bought the same more than twenty years before from Plácido Sanz and José Dolores Varela, and the 4-acre tract having been bought from the same Remigio Martínez Badía who had purchased it from Epifania Rodríguez in 1920. Those titles are recorded in the registry of property and were admitted as evidence at the trial, without objection on the part of the defendant and without the latter introducing any evidence to contradict them. In spite of that evidence, the lower court held that Remigio Martínez Badía was the real owner of the two tracts because, as he had been an employee of the defendant in 1910, when the track was built, and having consented to its passage over those two tracts, he would be estopped from making any claim. We think that that finding is not based on any evidence and that the same is not justified if the said tracts are not subject to a servitude of right of way for a railroad.

The fact of the railroad track crossing those two tracts is acknowledged by the defendant when in referring to them in its answer to the complaint it says: "The railroad track laid on the lands to which the complaint refers," and it is so declared by the trial court when stating in the opinion written in support of its judgment that "the trier has to conclude that the railroad track of the defendant really crosses those tracts." Having established the foregoing, let us see whether the defendant has any title or right to operate its railroad track over the two tracts of the plaintiff.

In its answer to the complaint Central Cambalache pleaded that the railroad track is laid over the two tracts of the plaintiff, partly by reason of the servitude and partly because it had bought a strip of land measuring 434.10 square

meters from Plácido Sanz, who segregated it from a larger tract. In support of this averment, the defendant introduced in evidence at the trial a public deed executed in 1912, whereby Patricio Sanz Cintrón and his wife, as the owners of a piece of land measuring 0.337 acre, sold to Central Cambalache a strip of land measuring 72.35 meters long by 6 meters wide or an area of 434.10 square meters, which crosses the tract from which it is segregated in a north to south direction since the main tract adjoins the said strip on the east and on the west.

When the instrument was introduced at the trial, the plaintiff objected to its admission because it had no relation to the tracts described in the complaint, but the court admitted said instrument and, as a ground for its judgment, it says that the 1.56-acre tract formerly was part of another tract of 20 acres belonging to Gregoria Serrano and if this were not so it would be necessary to conclude that it was from it that the defendant bought the strip of land of 434.10 square meters from Plácido Sanz, when the latter bought it from Higinio Bonet, who is one of the predecessors in interest of Martínez Badía.

The boundaries of the tract from which the said strip of land was segregated are different from those of the two tracts of the plaintiff, except on the west, where both are contiguous to lands of Agustín Serrano, but not to lands of Josefa Candelaria, whose property adjoins on the west the 1.56-acre tract. The fact that the said 1.56-acre tract and the tract of Plácido Sanz from which was segregated the strip bought by Central Cambalache formerly belonged to Higinio Bonet is sufficient for concluding that the strip of land so bought is within the 1.56-acre tract.

In regard to the 4-acre tract, it was declared by the lower court that it proceeds from another of 20 acres of Gregoria Serrano, because Remigio Martínez Badía had bought it from Epifania Rodríguez, who acquired it from Gregoria Serrano in 1919. Although the 4-acre tract and the 20-acre

tract of Gregoria Serrano have only the names of two persons as common and adjoining owners, albeit in different directions, since Inocencia Picón, who is one of the adjoining owners on the north of the 4-acre tract appears to the south of the 20-acre tract, and Juan Serrano Molleno, who lies to the east of the small tract, lies to the east of the larger one, for which reason the plaintiff's tract can not be placed within that of Gregoria Serrano, we may concede that the former proceeds from the other, because that fact has no important bearing upon the point of law arising in the present case, as we shall see later on.

Gregoria Serrano, as the owner of the 20-acre tract, subscribed under oath before a notary in 1910 a document in which she states that she constitutes a servitude of right of way for life and gratuitously on the Sabana Hoyos tract in favor of Central Cambalache for the laying down of a railroad track. That instrument is typewritten, with blank spaces which have been filled in handwriting, which is not that of Gregoria Serrano; and that part in which it has been typewritten that a consideration has been given for the servitude, has been crossed out and the word "gratuitously" has been handwritten.

The lower court says in its opinion that although it appears from this instrument that the grant was a gratuitous one, however it was shown that the defendant paid Gregoria Serrano the sum of $130 as compensation. The statement of the court rests on the claim that some witnesses for the defendant testified, and it appears from its books, that the Central paid to Gregoria Serrano $130 as compensation for the fruits to be destroyed in order to lay the track across her lands and for the expenses of removing her house to another place, because it stood at the place to be occupied by the railroad track; but this evidence does not justify the conclusion that said sum was given to her as a consideration for the servitude which she had granted gratuitously. Nor could the defendant alter the terms of the document signed

by Gregoria Serrano. *Sarria* v. *Alvarez*, 38 P.R.R. 813; *Villanueva* v. *Suárez*, 41 P.R.R. 39. That evidence does not justify the conclusion of the court and, therefore, that document must still be considered as a gratuitous grant of servitude, that is to say, without consideration. Said concession is not recorded in the registry of property nor could be recorded there, because it lacks the requisites prescribed by the Mortgage Law, and consequently it does not prejudice third per-sons.

The so-called gratuitous servitude of right of way which Gregoria Serrano granted to the defendant did not create any right of servitude in favor of Central Cambalache for lack of consideration; therefore, it becomes a mere permit or tolerance which does not affect the possession, according to section 446 of the Civil Code, and that it is revocable because such consent does not mean that the owner of the property has renounced forever his full ownership. *Torrès* v. *Plazuela Sugar Co.*, 24 P.R.R. 451; *Colón* v. *Plazuela Sugar Co.*, 31 P.R.R. 299. The holding in the case of *Gaztambide* v. *Guánica Centrale*, 26 P.R.R. 724, which the lower court cites in its opinion when referring to an estoppel in equity to deny the servitude, has no application to the present case because in the latter what is involved is a railroad track of a private corporation for its exclusive use, whereas in the former the railroad track involved was for the public use. *Torres* v. *Plazuela, supra.*

As the defendant has not introduced any evidence of a servitude other than the one set forth in the unilateral private instrument signed by Gregoria Serrano, which does not constitute a servitude, let us see if it has acquired such right by prescription, because its railroad track has been laid on the lands of the plaintiff for more than twenty years.

Although the presence of the defendant's railroad track over the plaintiff's land may show the existence of an apparent servitude of right of way, it does not mean that said servitude can be acquired by prescription, since the same

being a discontinuous servitude because it is used at long or short intervals, depending on human acts, it must necessarily be acquired by virtue of title, pursuant to the express provisions of section 475 of the Civil Code (1930 ed.), according to which continuous and non-apparent servitudes and discontinuous ones, whether apparent or not, can only be acquired by virtue of a title.

This question was decided in *González* v. *Plazuela Sugar Co.*, 42 P.R.R. 676, in which we declared in the opinion written by the late Justice Texidor that as a servitude of right of way for a railroad track is, by reason of its use, always of a discontinuous character, there is no doubt that it must be acquired by virtue of a title, since when defining in section 539 of our Civil Code (section 468, 1930 ed.) the classes of servitude, it is stated that continuous servitudes are those the use of which is or may be uninterrupted, without the intervention of any human act; and that discontinuous servitudes are those used at long or at short intervals, and which depend upon human acts.

It was also said: "When a servitude is used at long or short intervals, and depends upon human acts, it can only be characterized as discontinuous servitude, which characterization applies to an easement of way for the passage of trains transporting the crops from any particular estate." It was likewise stated: "A discontinuous servitude, whether apparent or not, can only be acquired by virtue of a title (section 546 of the Civil Code); and from a reading of section 547 of that Code there can be no doubt that the title must be one establishing a servitude and that this species of servitude can not be acquired by prescription; which is perfectly logical, as the acts of use, not being continuous but having a commencement and an end which recur without perfect continuity, can not create the prescriptive right."

Manresa, in his Commentaries on the Civil Code, volume 4, page 577; Scaevola in volume 10, page 157, and Morell in *"Legislación Hipotecaria,"* volume 1, page 341, recognize

that the servitude of right of way is a discontinuous one. That it can not be acquired by prescription but by virtue of title has been decided also by this court in the case of *Del Moral* v. *Muratti,* 34 P.R.R. 244, in which, in regard to the acquisition of a servitude by prescription, we expressed ourselves as follows: "The year 1890 is of decisive importance because that was the year when the Civil Code went into effect and since that time the servitude in question could be acquired only by virtue of a title, and in this case such a means of acquisition has not even been mentioned."

By virtue of the foregoing and as the defendant has failed to show that the strip of land bought by it and over which the railroad track has been laid is enclosed within the 1.56-acre tract, and as no valid title of servitude has been shown in regard to the property of Gregoria Serrano, of which the 4-acre tract of the plaintiff is said to be a segregation, the judgment appealed from must be reversed and another rendered instead sustaining the complaint and adjudging the defendant to remove within six months, counted from the date of this judgment, the railroad track which it has laid over the two tracts of the plaintiff, without special imposition of costs.

Mr. Justice Córdova Dávila, dissenting.

Based on the facts set forth in the majority opinion, we express our dissent with the conclusion established in said opinion in regard to the character of the servitude. Ordinarily, the servitude of right of way is discontinuous and must be acquired by virtue of title. In regard to this particular, the jurisprudence is unanimous. However, the current servitude of right of way which courts and commentators call discontinuous, can not be mistaken with the railroad right of way, which is stable, permanent, exclusive and ostensible, and has all the characteristics of a continuous and apparent servitude. The track laid and prepared for the passage of the trains, with its rails placed parallel, occupies

continuously a strip of land which can not be used for any other thing than the operation of the railroad. The use of that land, therefore, has the characteristics of continuity.

This court, in *Torres* v. *Plazuela*, 24 P.R.R. 451, 452, expressed its doubts as to the nature of a servitude exactly similar to the one involved in this case. Speaking through Mr. Justice Wolf, this court expressed itself then as follows:

"There is some question as to the nature of the servitude in this case. Generally, a right of way is a non-apparent, discontinuous servitude. If this is so, the appellants are right in maintaining that under sections 546 and 547 of the Civil Code such a right can only be acquired by a written title. On the other hand, if by reason of the placing of the rails on the land the servitude becomes apparent, then there may be serious doubt if a written document is needed. Scaevola, Vol. X, p. 238. In any event, it was necessary for the appellee to prove a title of some sort. We shall briefly discuss whether the appellee, irrespective of any principle of estoppel, acquired a title in this case."

In *González* v. *Plazuela Sugar Co.*, 42 P.R.R. 676, Mr. Justice Texidor, speaking for the court, reproduced the doubts expressed in the decision above quoted and added:

"Personally, the writer of this opinion would go a little further and say that this kind of servitude of passage is, by reason of its use, always of a discontinuous character. In the present case there is no doubt that its acquisition required a written title. Section 539 of the Civil Code defines continuous and discontinuous servitudes as follows:

" 'Continuous servitudes are those the use of which is or may be uninterrupted, without the intervention of any human act.

" 'Discontinuous servitudes are those used at long or short intervals, and which depend upon human acts.'

"When a servitude *is used at long or short intervals, and depends upon human acts*, it can only be characterized as discontinuous, which characterization applies to an easement of way for the passage of trains transporting the crops from any particular estate.

"A discontinuous servitude, whether apparent or not, can only be acquired by virtue of a title (section 546 of the Civil Code); and from a reading of section 547 of that Code there can be no doubt

that the title must be one *establishing* a servitude, and that this species of servitude can not be acquired by prescription; which is perfectly logical, as the acts of use, not being continuous but having a commencement and an end which recur without perfect continuity, can not create a prescriptive right.''

Although Mr. Justice Texidor appears as delivering a personal opinion, it may be said that this court accepted his viewpoint, since the decision rendered shows that it had the unanimous approval of the court. However, in *Román* v. *Plazuela Sugar Co.,* 44 P.R.R. 50, this court, in referring to the railroad track which was claimed by the defendant to constitute a servitude acquired by prescription, expressed itself as follows:

'' . . . The district court held that defendant had acquired an easement by prescription. Whether or not an easement of the sort claimed by defendant can be acquired by prescription is an interesting question. It need not be decided now. See, however, *Torres* v. *Falgoust,* 35 La. Ann. 497; *Torres* v. *Plazuela Sugar Co.,* 24 P.R.R. 451; 2 Morell, *Legislación Hipotecaria,* 666; 10 Scaevola, *Comentarios al Código Civil* 260, and 4 Manresa, *Comentarios al Código Civil,* 599.''

It is thus seen that this court has had serious doubt and that it still is undecided and hesitant in regard to this important question, in spite of having adopted the personal viewpoint of Justice Texidor. We do not wonder at such doubt and vacillation, because really the nature of this servitude has not yet been discussed with all the care and amplitude necessary to be able to reach a conclusion serving as a precedent and to definitely establish the viewpoint of this court.

The Spanish commentators are silent in regard to this servitude of right of way, which does not appear as having been discussed and determined by the Supreme Court of Spain. In the State of Louisiana, where like in Puerto Rico sugar cane is grown and transported to the factory, a case has been decided which directly deals with such a railroad right

of way over a private property and for the benefit of a private undertaking. It is not possible to deny, however, the continuity of the service rendered by the land occupied for the passage of trains. It is sufficient to apply the general legal principles on servitudes to arrive necessarily at the conclusion that such service is continuous and that it is rendered constantly with or without the intervention of human acts.

In France it has been held, construing the Code of Napoleon, that the servitude of right of way over a macadamized road goes on being discontinuous, notwithstanding its apparent continuity, because it requires for the exercise thereof a human act. We agree that the physical act of passing must be executed by a person; but if the use is continuous and as in the present case rails must be laid and the track prepared for the passage of engines, any servitude arising from the installation of these contrivances over which trains pass, constitute a unity including all these elements which supplement each other and are merged into a single structure.

The opinion delivered by the Supreme Court of Louisiana in the case of *Ogborn* v. *Lower Terrebonne Refining & Mfg. Co.*, 129 La. 379, is interesting and deserves reading. In that case the Justice who wrote the opinion set forth a personal viewpoint and adduced arguments to show that this servitude is continuous and apparent; but he added that the majority of the court thought differently on the grounds set forth by him. At the end of its opinion the court said that in France a servitude of right of way does not cease to be discontinuous within the provisions of the code if use is made thereof by means of a macadamized road and it is added that the character of this road is as apparent and continuous as that of a railroad and that, therefore, both servitudes can not be distinguished. We transcribe in full the opinion rendered by the said court, as follows:

"Defendant is operating a tramroad across the land of plaintiff for the transportation of its sugar cane to its factory, and this suit is an injunction to prevent it from doing so. Defendant claims to have a servitude of passage on plaintiff's land, by virtue of the prescription of 10 years. Plaintiff contends that such a servitude is a discontinuous servitude, and therefore not prescriptible. Whether that contention is well founded is the only question in the case.

"The writer of this opinion thinks that a servitude, the exercise of which necessitates the permanent maintenance of a railroad, consisting of roadbed, cross-ties, rails, bridges, etc., of which the dominant estate has the exclusive use, and of which the servient estate has only the burden, is a continuous apparent servitude. It is admittedly so at common law, and, in the writer's opinion, must be so under the civil law also, because the basic principles of prescription are the same in the two systems of law. The majority of the court think differently, however, and for the following reasons:

"Article 727, C. C.:

" 'Servitudes are either continuous or discontinuous.

" 'Continuous servitudes are those whose use is or may be continual without the act of man.

" 'Such are aqueducts, drain, view and the like.

" 'Discontinuous servitudes are such as need the act of man to be exercised.

" 'Such are the rights of passage, of drawing water, pasture and the like.'

"Art. 766:

" 'Continuous nonapparent servitudes, and discontinuous servitudes, whether apparent or not, can be established only by a title.

" 'Immemorial possession itself is not sufficient to acquire them.

" 'Immemorial possession is that of which no man living has seen the beginning and the existence of which he has learned from his elders.'

"In the case of *Torres* v. *Falgoust*, 37 La. Ann. 497, where a lane connecting a populous back settlement with the river front had existed and been open to the public for well-night a century through the plantation on the river front, and been constantly used by the public, this court held that the servitude was discontinuous and imprescriptible.

"Aubry & Rau, commenting on the articles of the Code Napoléon corresponding with the foregoing articles, has the following:

" 'Discontinuous servitudes are those which need the act of man to be exercised. What characterizes them is that their exercise does

not survive the act of man; it ceases the moment this act ceases. Such is the servitude of way; it is exercised each time the owner of the dominant estate passes over the servient estate, and only during the time occupied in his passing. The law cites as additional examples servitudes of drawing water, of pasturing cattle.

" 'These servitudes continue to be discontinuous, notwithstanding that in order that they should be exercised certain apparent works have had to be established. The reading together of articles 688 and 689 shows that the Code has employed two distinct divisions, which must not be confounded, "appearance" and "continuity." A servitude of passage which manifests itself by a door or gate, of which the key has been delivered to the owner of the dominant estate, or for which visible works have been constructed—for example, a road across the neighboring estate, a bridge—is none the less discontinuous, according to the classification made by the Code.' Volume 8, p. 118, No. 248, Servitudes.

"From the standard work, Carpentier et Du Saint (volume, Passage, Nos. 56 and 57), we take the following:

" 'The servitude of way may be apparent. It is so if it manifests itself by some exterior work, as a gate, or a macadamized road. But it continues, nevertheless, to be a discontinuous servitude, despite its apparent continuousness, and, inasmuch as the actual action of man is necessary for its exercise, it cannot be established by prescription.' (Citations.)

"It is thus seen that in France a servitude of passage is none the less discontinuous, within the meaning of the above-quoted article of the Code, if exercised by means of a macadamized road. A road of that character is as apparent and continuous as a railroad; and hence the two are not distinguishable in the present connection."

Chief Justice Breaux dissented.

The Supreme Court of Louisiana, rather than being convinced, seems to feel itself compelled to follow the construction given in France to the provisions of the Code Napoleon, similar to those of the Civil Code of Louisiana. Its arguments do not seem to be very much in agreement with the decision rendered.

In the case of *Kamer* v. *Bryant,* 46 S. W. 14, decided by the Court of Appeals of Kentucky, it was held that the servitude constituted by a switch track used by the owner of the

dominant tenement to transport stones from a quarry to a railroad could be acquired by prescription. In that case the court expressed itself as follows:

"We are also of opinion that appellees have the right of easement by prescription. The right to use the switch was first claimed and so used in December, 1875, and it was denied for the first time in 1894, nearly 19 years after. The fact that the quarry was not used after 1889 does not stop the running of the statute at that date. The right to use the quarry and its ownership were in litigation between its owners, and neither appellant nor his vendors were then claiming any right thereto. At the time appellant bought his lot the switch was there, and it plainly showed its uses, and that it was for the benefit of appellees' quarry; and he was the owner of his lot three years, and raised no objection to the switch, and for the first time objected when negotiations for its purchase failed. Appellant must be held to have had notice of the easement at the time he bought, and cannot now dispute its existence."

Our code says that discontinuous servitudes are those which are used at long or short intervals and which depend on human acts. In our opinion a railroad servitude is not used at short or long intervals, but constantly, and is not dependable on human acts for its effectiveness, since the land occupied by the track is continuously used, except by the owner of the tenement which renders the service for the operation of the railroad. The servitude of aqueduct does not cease to be continuous because the taps are closed or the flowing of water is interrupted by human acts. This servitude is considered by our jurisprudence as continuous and apparent. Referring to this status of continuity, the Court of Chancery of New Jersey, in the case of *Larsen* v. *Peterson*, 30 Atl. 1094, 1097, says:

"Mr. Gale, in the later editions of his book (Gale, Easem. (4th Eng. Ed. 1868, pp. 87–89) paragraphs 50, 52) comes to the conclusion that the test of continuousness is that there should be an alteration in the quality or 'disposition' of the tenement, which is intended to be, and is in its nature, permanent, and gives the tenement peculiar qualities, and results in making one part dependent

in a measure upon the other. It is not of the essence of this test, as applied to a water course, that the water should flow of itself continuously; but the test is that the artificial apparatus by which its flow is produced is of a permanent nature.

"It is with a view of bringing out this quality of permanence that the learned author contrasts this class of easements with a right of way, 'the enjoyment of which depends upon an actual interference of man at each time of enjoyment.' Now, what is meant by that sentence is that the burden of the easement in the case of a right of way is not felt by the servient tenement except at the moment of each enjoyment of it. A permanent structure upon, or alteration of, the servient tenement is not a necessary element of such an easement. And by the expression 'interference of man at each time of enjoyment' is meant no more than an interference with the servient tenement by an entry upon it, as illustrated not only by ordinary rights of way, but also by rights of way with a right to take something from the servient tenement, as in *Polden* v. *Bastard,* 4 Best & S. 258, L. R. 1 Q. B. 156.''

Both Mr. Gale and the New Jersey court show by their reasoning that if they had been facing a railroad servitude requiring the placing of rails and crossties on the ground and a certain alteration of the property for the passage of engines and trains, they would have decided that that servitude had the character of a continuous one. The discontinuous servitude of right of way referred to by the New Jersey court is that which does not require for its use a permanent structure and alteration of the servient tenement. Such railroad servitude makes itself felt on the servient tenement in a constant manner by means of the railroad track built thereon and not precisely each time that the servitude is used. Nor is the said tenement encroached upon when entering it, but it is continuously encroached upon from the moment the track is laid.

The Spanish commentators Scaevola and Manresa agree that the ordinary servitude of passage is discontinuous, but what would those commentators say if they had to give an opinion in regard to this new modality of servitude of way?

To our mind, their arguments clearly show which would be their viewpoint in this respect. The text writer Philippis is of the opinion that when the owner of the tenement using the servitude builds a bridge for the passage, the servitude becomes continuous and apparent and may be acquired by prescription. Referring to the opinion of the Italian commentator, Manresa says:

"It is the opinion of Philippis, when commenting on the Italian Civil Code, whose sections from 629 to 631 are equivalent to sections 537, 538, and 539 of our code, that where no doubt can be entertained of the servitude being consented to by the owner of the servient tenement, all servitudes may be considered as liable to be acquired by prescription. He cites to that effect two examples. *The first, which we have no objection in admitting, refers to the servitude of passage.* The mere fact of passing over the property of another, even though it may be from time immemorial, is not sufficient to establish the servitude, *but if the owner of the supposed dominant tenement builds a bridge for the passage, from that moment the discontinuous servitude of passage becomes continuous and apparent and may be acquired by prescription;* and it can not be objected that acquisition is only made of the right to have the bridge and not the right of passage, because the bridge is an exclusive means for the passage, and during the time necessary for the prescription the owner of the servient tenement must necessarily have noticed that it was applied to the passage and that a servitude of passage was sought to be imposed." 4 Manresa, 556.

Manresa makes no objection to the adoption of the viewpoint of Philippis in regard to the servitude of passage and, therefore, agrees to the proposition that where a bridge is built for the passage, the discontinuous servitude becomes a continuous and apparent servitude. And we ask, what is the difference between a fixed and permanent railroad track over which trains and engines run and the building of a bridge for the passage? If the bridge renders the servitude continuous and apparent, why not so the railroad track built on the land?

In his commentaries on the Civil Code, Scaevola expresses himself as follows:

"Apparent servitudes comprise in themselves all the necessary requisites of possession. They have the publicity, because the sign is the authorization of the servitude which amounts to that element. Every exterior sign of a servitude indicates that the latter exists there, and hence, the possession of a servitude of this kind can not but be considered as public. Whoever opens a window or builds an aqueduct on the tenement of another, can not be thought of as proceeding clandestinely, because both signs may be seen by the owner of the tenement; there is publicity in the sense that this term has in the matter of possession.

"The permanence of the sign carries with it the steadiness, the continuity of the right. What other continuity may be required? Does not such sign reveal the use of the servitude and the possibility of using the servitude whenever needed? Why reject prescription, on the ground that by virtue of the discontinuity, one can not know whether or not it is intended to acquire the possession of the servitude? In the case of a discontinuous servitude it is clear, of course, that its exercise will not be continuous; why should this be required? Moreover, the code itself does not state the continuity as an absolute principle; on the contrary, it accepts the discontinuity of the fact. That is openly stated in section 1944, according to which the possession is naturally interrupted where for any cause it ceases for more than *one year*. Now then, if the interruption of one year or less is no impediment to the possession; why should absolute continuity, the really absolute continuity, be required in regard to servitudes?" 10 Scaevola, 260, 261.

Such is the opinion of the Spanish commentators. As we have already stated, the Supreme Court of Spain has not had the opportunity of rendering its judgment in regard to this new modality of servitude of passage, but if this question is considered in the light of its numerous decisions in the matter of servitudes, perhaps it would not be going too far to say that its viewpoint would not be different from that entertained up to now by the said commentators. For us the question does not present great difficulties. It is sufficient to apply in this case the general legal principles in the matter

of servitudes in order to reach the unavoidable conclusion that we are dealing with a continuous and apparent servitude acquired by prescription.

We think that the judgment appealed from should have been affirmed. I am authorized to state that Mr. Justice Hutchison concurs in this opinion.